**MORGAN, LEWIS & BOCKIUS LLP**
**(A Pennsylvania Limited Liability Partnership)**
**502 Carnegie Center**
**Princeton, New Jersey 08540**
**609-919-6600**
**Richard G. Rosenblatt**
**Drew B. Wixted**
**Attorneys for Defendants Cisco Systems, Inc. and Mark Canha**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **AVAYA INC.,** | **Civil Action No. 10-05881-FLW-TJB** |
| **Plaintiff,** | |
| **v.** | **Document Filed Electronically** |
| **CISCO SYSTEMS, INC., MARK CANHA, AND DOES 1-50,** | |
| **Defendants.** | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION FOR A PROTECTIVE ORDER**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................ 1

II.   ARGUMENT ............................................................ 7

      A.    Defendants Have Actively Participated in Discovery. ................ 9

      B.    As a Threshold Matter, Plaintiff Is Not Entitled To Discovery
            of Any of Cisco's Confidential Information Because It Has
            Failed To Identify Its Trade Secrets With Reasonable
            Particularity. ................................................... 9

      C.    Avaya Is Not Entitled to Discovery of Cisco's Confidential/
            Proprietary Information Because It Has Not Presented A
            Substantial  Factual Basis For Its Claims ......................... 13

      D.    Plaintiff's Discovery Requests Are Impermissibly Overbroad
            And Irrelevant To The Underlying Litigation ...................... 23

      E.    Avaya Should Be Sanctioned For Necessitating This Motion. ......... 28

III.  CONCLUSION .......................................................... 29

## TABLE OF AUTHORITIES

**Page(s)**

## <u>Cases</u>

*A & B Ingredients, Inc. v. Hartford Fire Ins. Co.*, No. 08-6264,
  2010 WL 335616 (D.N.J. Jan. 29, 2010) .............................................................8

*American Heavy Moving & Rigging Co. v. Robb Technologies, LLC*,
  No. 2:04-cv-00933 (D.Nev. July 25, 2006) ...........................................................9

*Atkinson v. Middlesex County*,
  No. 09-4863, 2010 WL 398500 (D.N.J. Jan. 28, 2010).......................................28

*Automed Technologies, Inc. v. Eller*,
  160 F.Supp.2d 915 (N.D. Ill. 2001) ......................................................12, 14, 15

*Avetc Industries, Inc. v. Sony Corp. of America*,
  500 A.2d 712 (N.J. Super. 1985)...........................................................................5

*Bayer v. AG v. Betachem, Inc.*,
  173 F.3d 188 (3d Cir. 1999)...........................................................................7, 26

*Berrie v. Berrie*,
  457 A.2d 76 (N.J. Super. 1983)...........................................................................18

*Caver v. City of Trenton*,
  192 F.R.D. 154 (D.N.J. 2000) .............................................................................27

*DeRubeis v. Witten Technologies, Inc.*,
  244 F.R.D. 676 (N.D. Ga. 2007).....................................................................10, 11

*Dura Global Tech., Inc. v. MagnaDonnelly, Corp.*, No. 07-cv-10945,
  2007 WL 4303294 (E.D. Mich. Dec. 6, 2007).......................................10, 11, 12

*Engelhard v. Savin Corp.*,
  505 A.2d 30 (Del. Ch. 1986)...........................................................................11, 18

*Federal Trade Commission v. American Tobacco Co.*,
  264 U.S. 298 (1924) ............................................................................................15

*Gentex Corp. v. Sutter*, 2008 WL 5068825
  (M.D. Pa. Nov. 25, 2008) ....................................................................................10

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Glenmede Trust Co. v. Thompson,*
    56 F.3d 476 (3d Cir. 1995) ............................................................................8

*Hill v. Best Medical Internat'l, Inc.,*
    No. 07-01709, 2010 WL 2546023 (W.D. Pa. June 24, 2010) ......................10, 15

*IBM Corp. v. Visentin,*
    2011 WL 672025 (S.D.N.Y. Feb. 16, 2011) ........................................12

*MBL (USA) Corp v. Diekman,*
    445 N.E. 2d 418 (Ill. App. 1983) .........................................................17

*Microwave Research Corporation v. Sanders Associates. Inc.,*
    110 F.R.D. 669 (D. Mass. 1986) ....................................................16, 17

*NE Technologies, Inc. v. Evolving Systems, Inc.,* No. 06-6061,
    2008 WL 427768 (D.N.J. Sept. 12, 2008) .............................................27

*Neothermia Corp. v. Rubicor Medical, Inc.,*
    345 F.Supp.2d 1042 (N.D. Cal. 2004) .................................................11

*Nestle Food Corp. v. Aetna Cas. & Surety Co.,*
    135 F.R.D. 101 (D.N.J. 1990) ...............................................................27

*Nicholas v. Wyndham Intl, Inc.,*
    373 F.3d 537 (3d Cir. 2004) .................................................................26

*Pansy v. Borough of Stroudsburg,*
    23 F.3d 772 (3d Cir. 1994) .....................................................................9

*Perfect Measuring Tape Co. v. Notheis,*
    114 N.E. 2d 149 (Ohio App. 1953) .................................................15, 16

*Porous Media Corp. v. Midland Brake, Inc.,*
    187 F.R.D. 598 (D.Minn. 1999) ...........................................................10

*Professional Recovery Services, Inc. v. General Elec. Capital Corp.,*
    No. 06-2829, 2009 WL 137326 (D.N.J. Jan. 15, 2009) .......................28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Puritan-Bennett Corp. v. Pruitt,*
   142 F.R.D. 306 (S.D. Iowa 1992) ..................................................................17

*Ray v. Allied Chemical Corporation,*
   34 F.R.D. 456 (S.D.N.Y. 1964)..............................................................14, 15

*Shimadzu v. Electric Storage Battery Co.,*
   6 F. Supp. 393 (E.D. Pa. 1934) ...................................................................18

*Zuk v. Eastern Pa. Psychiatric Inst. of Med. College of Pa.,*
   103 F.3d 294 (3d Cir. 1996).......................................................................28

**Other Authorities**

http://en.wikipedia.org/wiki/Session_Initiation_Protocol ..........................................21

http://www.avaya.com/gcm/master-usa/en-us/corporate/ whois avaya
   /leadership/leadership.htm....................................................................7

http://www.avaya.com/usa/careers/opportunities/professionals ...........................19

http://www1.avaya.com/campaign/demo/sip08/index.html)...................................22

Lee Ann Stevenson, *Can you Be More Specific?,*
   New York Law Journal, vol. 243 (Feb. 16, 2010) ...............................................12

**Rules**

Fed. R. Civ. P. 26(b)(2)(c)......................................................................7

Fed. R. Civ. P. 26(b)(2)(c)(i)-(iii)..............................................................8

Fed. R. Civ. P. 26(c) ........................................................................8, 18

Fed. R. Civ. P. 26(c)(1)..........................................................................8

Fed. R. Civ. P. 37(a)(5)(A) ....................................................................28

## I.  INTRODUCTION

Cisco and Avaya are competitors in a number of market spaces in which Avaya sells its products and services.  Avaya is maniacal in its efforts to go head-to-head with Cisco in their competitive market, and has developed a corporate strategy known as its "Attack Cisco" plan.  Among other things, the "Attack Cisco" strategy includes, among other things, the targeting and solicitation of key Cisco employees.  Ironically, this is the very same conduct that Avaya claims to be unlawful in this case.  Unlike Avaya, however, Cisco does not remotely object to Avaya undertaking such an initiative.  Such strategy, when executed fairly, is legitimate free enterprise competition, and Cisco welcomes it.

Defendants do object, however, to Avaya's misuse and abuse of the litigation process to advance its "Attack Cisco" campaign.  Indeed, to say that Avaya has engaged in "scorched earth" litigation is a gross understatement.  Avaya has propounded discovery requests seeking access to virtually every aspect of its business – including, without limitation, business strategies, competitive initiatives, product development plans, customers or potential customers, product pricing, and hiring practices and procedures – and has served the following discovery:

- five separate document requests upon Cisco (91 total requests);
- three document requests upon Mr. Canha (31 total requests);
- two sets of interrogatories to Cisco;
- two sets of interrogatories to Mr. Canha;

- eight individual deposition notices, and
- one 30(b)(6) deposition notice (containing 34 separate deposition topics).[1]

Set forth below are just a few examples from Avaya's **twelve (12) written discovery requests and separate notices of depositions of** the intrusive and overreaching requests that Avaya has served:[2]

- Interrogatory No. 8 to Cisco seeks the identity of <u>every</u> current and former Avaya employee that has been contacted by Cisco (or a recruiter on behalf of Cisco) relating to potential employment with Cisco. Interrogatory No. 9 seeks the identity of the Cisco employee(s) and recruiters that contacted the current and former Avaya employees. Document Request No. 19 seeks all documents relating to those communications. Similarly, Document Request No. 13 and Deposition Topics 10 and 11 seek documents/testimony relating to Cisco's plans, strategies, or proposals to hire employees from Avaya and <u>other competitors</u>. Would Avaya want Cisco to know its hiring plans? Of course not.

- Interrogatory Nos. 10 and 11 to Cisco seek the number of individuals in all of ***North America*** that Cisco has contacted about potential employment; to whom Cisco has offered employment; the position offered to each candidate; and the entity for whom each candidate worked. In addition to being entirely irrelevant to this litigation, these interrogatories are wildly overbroad. Indeed, the interrogatories are not even limited to Avaya, and instead seek information concerning ***any*** employee from ***any*** company anywhere in North America that Cisco has contacted about employment or offered employment.

---

[1] Defendants have created an appendix of the voluminous discovery Avaya has propounded, which it has filed herewith.

[2] For the Court's convenience, Defendants have prepared a chart identifying and summarizing all of the objectionable requests at issue on this Motion. The chart shows the specific request and Defendants objections/response. A copy of the chart is attached to the Declaration of Drew Wixted, Esquire ("Wixted Decl.") as Exhibit A).

- Document Request No. 25 and Deposition Topic No. 6 seek all documents and testimony relating to any monetary and non-monetary compensation, benefits, bonuses, or inducements that Cisco has offered, provided, or proposed to any former Avaya employee, and how that compensation compares to Cisco employees hired from other companies.  These requests improperly seeks confidential compensation information which, if provided, would give Avaya an enormous competitive advantage by disclosing what Cisco pays in the competitive marketplace for talent and, further, would allow Avaya to have an unfair advantage in determining what it needs to pay in order to retain that talent that might be interested in moving elsewhere.

- Request No. 42 seeks documents describing how Cisco's sales organization competes with Avaya.  Would Avaya want to turn over to Cisco its strategy for competing with Cisco?

- Deposition Examination Topic No. 4 seeks testimony concerning the job duties and responsibilities of every former Avaya employee Cisco has hired since January 1, 2009; and

- Deposition Topic Nos. 30 and 31 seek testimony concerning Mr. Canha's involvement in the solicitation or recruitment of Avaya employees or customers, even though there is absolutely no allegation (or factual basis to support such claim) that Mr. Canha has, in any way, violated his non-solicitation obligations.[3]

No competitor would provide such information to the competition – and the mere filing of a lawsuit, without substantially more, does not open Pandora's box.

Avaya, however, contends that by merely invoking the words "misappropriation" and "unfair competition" it somehow has become entitled to

---

[3]   Many of the foregoing examples, and many of Avaya's requests in general, relate to Cisco's recruitment and hiring of eight (8) members of Avaya's Business Communications Solutions Group in January 2009.  (*See* Complaint, ¶¶ 18 – 23).  Those allegations, and any discovery related thereto, are entirely irrelevant, as Avaya released any and all claims it may have had against Cisco pursuant to a negotiated agreement (*see* Complaint, ¶ 21).

whatever it pleases under the guise of liberal rules of discovery.  As many times as Cisco has explained that much more is required, Avaya has repeated its mantra-like argument that since it has pleaded allegations, it must be entitled to discovery to explore those allegations.  That is not the law in the area of trade secret and unfair competition litigation.  As Avaya refuses to play by controlling law, Defendants are now forced to burden the Court with this Motion for Protective Order.

The law has long held that competitors may not use litigation as a tool to get at a competitor's confidences.  In such cases, courts require a plaintiff to provide a substantial factual basis for its claims *before* it is permitted to rummage through a competitor's confidences.

Here, though Avaya alleges that Cisco "targeted" and "raided" certain employees in order to "cripple" Avaya, the only actual *fact* to which it cites is that since September 1, 2009, Cisco has hired approximately 60 Avaya employees in various positions.  (Complaint, ¶ 22).  What Avaya fails to address, however, is the answer to the question:  "So what?"  Since August 1, 2009, Cisco has hired more than **11,100** employees.  Thus, even assuming that Cisco has hired 60 Avaya employees since September 1, 2009, those hires account for less than one-half of one percent (0.5%) of all Cisco hires.  Of course, this is beside the point, because, despite Plaintiff's sweeping rhetoric, it is perfectly lawful to hire a competitor's at-will employees.  In our capitalistic society, we call this *competition*. *See Avetc*

*Industries, Inc. v. Sony Corp. of America*, 500 A.2d 712, 715 (N.J. Super. 1985)
("The right to compete for employees is such an equal right provided it is not done
by improper means.").

Avaya has argued that it is entitled to intrude on Cisco's confidences
because in June 2010, John Hernandez, a Cisco Vice President, stated that Cisco
has a "tangible plan to knock Avaya out as contact center market leader and
become number one." (Complaint, ¶ 23). Again, "so what?" There is absolutely
nothing improper about one company expressing its desire to leapfrog another in
the competitive marketplace. Again, this is nothing other than ***competition***. In
fact, ***Avaya*** itself proudly and prominently displays on its government solutions
website "The Avaya Plan to Beat Cisco," which contains a link to a Forbes
Magazine article describing new Avaya software that is "part of Avaya's plan to
leap past Cisco in phone software and phone equipment and fend off interlopers."
(A true and correct copy of this article is attached to the Wixted Decl. as Exhibit
B). Mr. Canha's former Avaya boss, Joel Hackney, stated in an interview
commenting on Avaya's business prospects, "[t]here's a lot of stimulation, so now
we need to take that stimulation and turn it into growth. Let's get away from the
'defend the base' mindset and move into growth mode, and ***take some share from
our competitors***." (A true and correct copy of this interview is attached to the
Wixted Decl. as Exhibit C). Avaya is hard-pressed to explain why it is perfectly

acceptable for it to have a plan to "leap past" Cisco and take share from it (and
other Avaya competitors), but it is improper for Cisco to have a plan to do the
same to Avaya.  Stated differently, the fact that Mr. Hernandez made the perfectly
appropriate and wholly lawful statement that Cisco has a plan to compete
effectively against Avaya in the call center marketplace is hardy a basis to allow
Avaya to have access to Cisco's strategy.  If Avaya wants to compete, Cisco
welcomes that it do so – but it must do so fairly and squarely.

Moreover, while Avaya harps on Cisco having hired 60 of its employees, the
Court should consider the following facts:

- in the same period, Cisco estimates that Avaya has hired approximately 60
  Cisco employees.

- some of Avaya's most senior executives – including its Chief Executive
  Officer; Senior Vice President and President, Global Communications
  Solutions; Senior Vice President of Corporate Development and Strategy;
  Senior Vice President of Channel Communication; and Vice President of
  Emerging Products and Technology, are former *Cisco* employees.[4]

- in 2008, Cisco's former Chief Development Officer, Charles Giancarlo,
  became Avaya's President and Chief Executive Officer.  He is presently
  Chairman of Avaya's Board of Directors.[5]

What these facts bear out is that Avaya is a full participant in a migratory and
capitalistic labor marketplace where employees move from competitor to

---

[4]   See Wixted Decl., Exhibit D, which are printouts from the Avaya website of the
biographies of these executives.

[5]   See Wixted Decl., Exhibit E, which is a printout of Avaya's Form 10K filed on
December 7, 2010 at pages 136 and 137.

competitor looking to further their career interests. In this regard, a review of the Avaya's "Leadership" page from its own website reveals that Avaya itself is built on talent that it has recruited from a "who's who" list of United States technology companies, including Cisco. (See http://www.avaya.com/gcm/master-usa/en-us/corporate/ whois avaya /leadership/leadership.htm).

These facts also bear out that although Avaya claims that Cisco is "unfairly" competing against it, it has alleged no *facts* to explain why Cisco's efforts are nothing more than ordinary competition. Indeed, Avaya engages in precisely the same conduct about which it now complains. Accordingly, as discussed more fully below, the Court should reject Avaya's intrusive and burdensome discovery requests concerning its misappropriation and unfair competition claims unless and until Avaya comes forward with substantial additional *facts* to support these claims.

## II.    ARGUMENT

Courts are specifically vested with the authority to limit a party's discovery requests, where, as here, the discovery is sought for improper motives, and, as a result, the burden and intrusiveness of the discovery requests is likely to outweigh their benefit. *See* Fed. R. Civ. P. 26(b)(2)(c); *see also Bayer v. AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). "[W]hile discovery and relevance may be broad, they are not boundless." *A & B Ingredients, Inc. v. Hartford Fire Ins. Co.*,

No. 08-6264, 2010 WL 335616, at * 4 (D.N.J. Jan. 29, 2010).  Accordingly, such discovery requests should be denied if this Court finds that there exists a likelihood that the resulting benefits would be outweighed by the burden or expense imposed as a consequence of the discovery, as discussed in more detail below.  *See* Fed. R. Civ. P. 26(b)(2)(c)(i)-(iii).

Additionally, this Court may limit the overbroad and irrelevant areas of inquiry identified in Plaintiff's discovery requests pursuant to Federal Rule of Civil Procedure 26(c).[6]  In determining whether "good cause" exists under Rule 26(c), the federal courts have adopted a balancing approach, under which various factors may be considered, including whether disclosure will violate any privacy interests and whether the information is being sought for a legitimate or an improper purpose.  *See Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). Ultimately, because Avaya's requests will work a clearly defined and serious

---

[6]   Pursuant to Rule 26(c), a court:

> may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; . . . (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; . . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed . . . .

Fed. R. Civ. P. 26(c)(1).

injury upon Cisco,[7] the Court should preclude Avaya's discovery. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994) (party establishes good faith need for protective order when it establishes that disclosure of information at issue "would work a clearly defined and serious injury upon [it]").

### A.   Defendants Have Actively Participated in Discovery.

Cisco has never suggested that it should provide no discovery. It is a matter of enough finally being enough. In the roughly five months since Judge Wolfson denied Avaya's request for injunctive relieve, Avaya has: (i) deposed Mr. Canha and his direct supervisor (both for an entire day each);[8] (ii) forensically reviewed Mr. Canha's Cisco computer, personal computers, and external media devices (which review encompassed approximately 90,000 records) for any reference to Avaya; (iii) and reviewed approximately 60,000 pages of documents produced by Defendants, including **all** of Mr. Canha's non-privileged email (other than health-related communications) and the entire contents of Mr. Canha's Cisco email.

### B.   As a Threshold Matter, Plaintiff Is Not Entitled To Discovery of Any of Cisco's Confidential Information Because It Has Failed To Identify Its Trade Secrets With Reasonable Particularity.

---

[7]   *See American Heavy Moving & Rigging Co. v. Robb Technologies, LLC*, No. 2:04-cv-00933, at * 3 (D.Nev. July 25, 2006) (noting "there is a greater likelihood of harm where disclosure of trade secrets is sought in litigation between competitors.").

[8]   Notably, Mr. Glickman was produced in his individual capacity <u>and</u> as Cisco's corporate designee on the topic of Mr. Canha's "position and job duties at Cisco."

The law is legion that a plaintiff claiming misappropriation of trade secrets and other proprietary information must identify that information which has been misappropriated <u>with specificity</u> and particularity <u>prior</u> to seeking discovery of a defendant's confidential, proprietary, and trade secret information. *See, e.g.*, *Gentex Corp. v. Sutter*, 2008 WL 5068825, at *1 (M.D. Pa. Nov. 25, 2008) ("[P]laintiff should identify the trade secrets at issue with 'reasonable particularity'" before discovery into Defendant's business activity is permissible); *Dura Global Tech., Inc. v. MagnaDonnelly, Corp.*, No. 07-cv-10945, 2007 WL 4303294, at *3-4 (E.D. Mich. Dec. 6, 2007) (staying discovery on trade secret information until the plaintiffs identified the allegedly misappropriated trade secrets with reasonable particularity); *DeRubeis v. Witten Technologies, Inc.*, 244 F.R.D. 676 (N.D. Ga. 2007) (requiring plaintiff to "first identify with 'reasonable particularity' those trade secrets it believes to be at issue."); *Porous Media Corp. v. Midland Brake, Inc.*, 187 F.R.D. 598 (D.Minn. 1999) ("Ordering the list of [plaintiff's] trade secrets at the outset of the litigation is a common requirement.").[9]

---

[9] "Reasonable particularity" has been defined as a description of the trade secrets at issue that is sufficient to "(a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets." *Hill*, No. 07-01709, 2010 WL 2546023, at * 3 (citing *DeRubeis*, 244 F.R.D. at 681 (granting motion to compel and motion for protective order)); *see also, Dura Global Tech.*, 2007 WL 4303294, at *3-4 (*citing Automed Tech., Inc.*, 160 F.Supp.2d at 925); *Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 32 (Del. Ch. 1986) (the

10

The rational behind requiring early identification of the trade secrets at issue is to protect a responding party from precisely the type of intrusive probing detailed above.[10]

Plaintiff has not done what it is required under the law. On March 9, 2011, Judge Wolfson ordered Avaya to identify the trade secrets Defendants allegedly disclosed. In response, Avaya provided a useless thirty-one page list of over 203 purported trade secrets that may be "at risk" of inevitable disclosure in the future. (See Plaintiff's Identification of Trade Secrets, attached as Exhibit F to the Wixted Decl.").[11] Included on this list are such ridiculously overbroad topics as "All Avaya submissions to requests for information to customers or potential customers that compete with submissions from Cisco" and "All Avaya price lists and discounting information for products and services competitive to those offered by

---

purpose of the specificity and particularity requirement is "to clarify the issues involved in the dispute so as to assure that there will be no disclosure of an adversary litigant's trade secrets beyond what is necessary for the prosecution of the litigation."

[10]   *See DeRubeis*, 244 F.R.D. at 680-81 (explaining early identification discourages the filing of meritless trade secret complaints, prevents plaintiff from using discovery process as a means to obtain defendant's trade secrets, and frames appropriate scope of discovery); *see also Neothermia Corp. v. Rubicor Medical, Inc.*, 345 F.Supp.2d 1042, 1044 (N.D. Cal. 2004).

[11]   Avaya has designated Exhibit F as "Attorneys' Eyes Only." While Defendants do not agree with this designation, Defendants have take appropriate steps to protect Avaya's designation (in accordance with the applicable Discovery Confidentiality Order and Local Civ. R. 5.3) by filing a motion to seal and sealing the Wixted Declaration.

Cisco." Neither the Complaint nor this list includes any discussion of the actual trade secrets allegedly misappropriated and disseminated to Cisco employees, let alone a description with "reasonable particularity." *See, e.g., Automed Technologies*, 160 F.Supp.2d at 915 (holding general allegations of "software, designs and research" and generic references to three research projects by name are insufficient to identify trade secrets in question); *Dura Global Tech.*, 2007 WL 4303294, at \*3-4 (explaining plaintiffs' description too general to specify the trade secrets at issue); *IBM Corp. v. Visentin*, 2011 WL 672025, \*16 (S.D.N.Y. Feb. 16, 2011) (finding that IBM's strategies to "attack" its competitor and discussions of "lessons learned" from head to head competition were "largely the equivalent of 'buy low, sell high' – hardly a trade secret"); Lee Ann Stevenson, *Can you Be More Specific?*, New York Law Journal, vol. 243 (Feb. 16, 2010) ("[C]ourts around the country are becoming increasingly impatient with plaintiffs who seek to rely on vague and general descriptions of alleged trade secrets until after discovery is underway.").

Instead, Plaintiff vaguely identified those trade secrets its believes to be "at risk" and which Defendants may inevitably disclose in the future. Put differently, Plaintiff has not identified any trade secrets that were actually misappropriated (despite alleging that Defendants improperly disclosed its trade secrets during a

2010 training meeting in Boston, Massachusetts (Complaint, ¶¶ 28-29)), and has utterly failed to comply with Judge Wolfson's directive.

It is against this factual and legal backdrop that Avaya's discovery must be judged. In order to minimize the injury that Cisco will inevitably suffer as a result of disclosing its confidences, Avaya must identify with **particularity** the trade secrets at issue so that Cisco can respond accordingly. Unless and until that were to occur, Cisco should not have to produce any additional documents.

C.    **Avaya Is Not Entitled to Discovery of Cisco's Confidential/ Proprietary Information Because It Has Not Presented A Substantial Factual Basis For Its Claims.**

Even if it had described with particularity the trade secrets that have been allegedly misappropriated, Avaya is still not entitled to discovery of Cisco's confidences because it has failed to articulate a substantial factual basis for its claims. Avaya seeks information from Cisco that no competitor ever would voluntarily provide to a rival. Specifically, Avaya demands production of documents and witnesses regarding virtually every aspect of Cisco's business, including, but not limited to, business strategies (Request Nos. 13, 14, 15, 17, 38, 58-60, 66, Deposition Examination Topic No. 13), product development plans (Request Nos. 15, 17, 36, 41, 42, 62), customers or potential customers (Request Nos. 15, 17, 36, 41, 42, 45, 46, 61, 71, 72, 73, 81, 85, 86, Deposition Examination Topic Nos. 15, 26), product pricing (Request No. 75, Deposition Topic No. 17),

hiring practices (Request Nos. 13, 19, 20, 22-33, 68, Deposition Topic Nos. 9, 10, 11), compensation models (Request Nos. 24, 25, 33, Deposition Examination Topic No. 6), and corporate structure (Request No. 18, Deposition Examination Topic No. 4, 7).  (See Wixted Decl., Ex. A)

Courts routinely have rejected the type of unfair, anti-competitive litigation discovery practices pursued here by Avaya.  The courts addressing this issue recognize that allowing a plaintiff such discovery, merely by asserting a claim for trade secret misappropriation and unfair competition would create an untenable situation in which a company could obtain commercially sensitive information of its competitors merely by filing a lawsuit.  *See Automed Technologies, Inc. v. Eller*, 160 F.Supp.2d 915, 926 (N.D. Ill. 2001) ("[Defendant] has as much right to protect its propriety information as does [Plaintiff].").  As the court stated in *Ray v. Allied Chemical Corporation*, 34 F.R.D. 456 (S.D.N.Y. 1964):

> And the circumstance that a litigant in his complaint alleges that he disclosed confidential and secret processes to a defendant, which the latter in turn denies, does not automatically entitle the plaintiff to obtain disclosure of the alleged offending processes in aid of plaintiff's pretrial discovery -- ***otherwise it would be a simple matter to obtain one's trade secret by the mere assertion of a claim***. The end result of disclosure, where ultimately it develops that the asserted claim is without substance, may be so destructive of the interests of the prevailing party that ***more is required than mere allegation to warrant pretrial disclosure***.

*Id.* at 457 (emphasis added).[12]

Courts require more than just a showing of relevance before allowing a plaintiff to obtain through discovery the commercially sensitive information of its competitors.[13] Courts required the plaintiff to demonstrate that there is some legitimate factual basis for its claim before permitting such discovery to proceed. *Perfect Measuring Tape Co. v. Notheis*, 114 N.E. 2d 149 (Ohio App. 1953), is instructive. There, in considering appropriate discovery in litigation between competitors, the court held:

---

[12] It is important to emphasize that Cisco is not claiming that all of the documents that Avaya seeks necessarily contain trade secrets. While some of the cases cited herein involved situations where the plaintiff sought to obtain the defendant competitor's trade secrets, the rationale for these decisions – that a company is not entitled to unrestricted access to the commercially sensitive information of its competitors simply because it files a lawsuit – is equally applicable to business information that does not rise to the level of a trade secret. In short, simply because Avaya has filed a lawsuit does not mean that Cisco must thereby open the vault to permit Avaya to rummage through whatever it wants. *See, e.g., Federal Trade Commission v. American Tobacco Co.*, 264 U.S. 298, 306 (1924) ("It is contrary to the first principles of justice to allow a search through all the respondents' records, relevant or irrelevant, in the hope that something will turn up.").

[13] In this case the obvious nature of Plaintiff's discovery is compounded by the fact that the documents and information sought are generally not even relevant to the subject matter of this litigation. *See infra* at II(C); *see also Automed Technologies, Inc.*, 160 F.Supp.2d at 926 (explaining position that requesting party is only seeking to discover own confidential information is a "red herring, particularly given the breadth of plaintiff's discovery requests."); *Hill v. Best Medical Internat'l, Inc.*, No. 07-01709, 2010 WL 2546023, at *4 (W.D. Pa. June 24, 2010) (holding defendant "will not be compelled to reveal any of its own trade secrets or confidential information in response to the very broad discovery sought by [Plaintiff].").

It should be observed also that at the time the depositions were taken the issues were not made up on the pleadings and plaintiff had not made any showing in support of the allegations in its petition, including the allegations that plaintiff's business embraced certain trade secrets and that they were surreptitiously taken by defendants. *It appears to follow that plaintiff must at least make a prima facie showing in support of its petition that it has business or trade secrets which were wrongfully misappropriated by defendants before it can claim the right to pry out or curiously inspect the alleged trade secrets of defendants.*

*Id.* at 153-154 (emphasis added).

In *Microwave Research Corporation v. Sanders Associates. Inc.*, 110 F.R.D. 669 (D. Mass. 1986), the plaintiff in an action for misappropriation of trade secrets and confidential information moved for an order compelling the defendant, its competitor, to produce certain documents containing defendant's trade secrets and confidential information.  The court noted that in such cases, it is necessary to depart from traditional discovery principles, holding:

However, when discovery of a defendant's alleged trade secrets and confidential information is sought in litigation regarding misappropriation by a defendant of a plaintiff's trade secrets or confidential information, **it is not enough to analyze the requested discovery in terms of relevance.**  *In order to protect a corporate defendant from having to reveal its trade secrets and confidential information to a competitor during discovery, a plaintiff must demonstrate that there is a factual basis for its claim.*

*Id.* at 672 (emphasis added).  In *denying* the plaintiff's motion to compel, the court articulated the following standard:

But before plaintiff is entitled to the type of broad discovery into a defendant's trade secrets, it must show that other evidence which *it*

> *has gathered through discovery provides a substantial factual basis for its claim.*

*Id.* at 674 (emphasis added); *see also Puritan-Bennett Corp. v. Pruitt*, 142 F.R.D. 306, 308-9 (S.D. Iowa 1992) (explaining "it is first incumbent upon [Plaintiff] to make a showing that there is a substantial basis for its claim" before plaintiff is entitled to discovery of competitor's trade secrets).

Similarly, in *MBL (USA) Corp v. Diekman*, 445 N.E. 2d 418 (Ill. App. 1983), a case in which the claims asserted were quite similar to those here, the plaintiff sued one of its former employees and his new employer for misappropriation and disclosure of trade secrets and other confidential proprietary information in violation of a confidentiality agreement and common law trade secret principles. The appellate court affirmed the decision of the trial court to require the plaintiff to establish a prima facie case of "misuse of, and the existence of, a trade secret" before allowing the plaintiff to obtain information from the defendant regarding its "current methods, techniques and processes." *Id.* at 427;[14] *see also Shimadzu v. Electric Storage Battery Co.*, 6 F. Supp. 393, 394 (E.D. Pa. 1934) (in patent infringement suit, plaintiff must make prima facie showing of infringement before it can have access to defendant's "processes, methods, and products. . . ."); *Engelhard v. Savin Corp.*, 505 A.2d 30, 33 (Del. Ch. 1986) (before

plaintiff can obtain through discovery defendant's trade secrets and confidential information, "the plaintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret. . . ."); *infra* at II(C).

New Jersey clearly embraces the premise underlying these decisions – that a company cannot obtain the commercially sensitive information of its competitors simply by filing a lawsuit. Indeed, in *Berrie v. Berrie*, 457 A.2d 76 (N.J. Super. 1983), the court explained its reluctance to force a competitor to divulge confidential information, especially where the need for the information was not sufficient to outweigh the invasion of corporate privacy. *Id.* at 82. New Jersey's commitment to this principle is likewise evident in Rule 4:10-3, which mimics the protections afforded to trade secrets and confidential information by the Federal Rules of Civil Procedure. *Compare* N.J. Court Rule 4:10-3 *with* Fed. R. C. P. 26(c).

A corporate plaintiff in a trade secrets/unfair competition case must make a substantial factual showing to support its claim before being entitled to discovery of its competitor's confidences. Avaya has made no such showing. Though it makes threadbare allegations that Cisco "targeted" and "raided" certain employees

---

[14]   Although the trial court's decision was in response to a motion in limine rather than a discovery motion, the principles underlying its decision are equally applicable to the instant case.

in order to "cripple" Avaya, the only **fact** that it has cited is Cisco's hiring of approximately 60 Avaya employees over roughly a year.  (Complaint, ¶ 22).  As discussed above, what Avaya ignores in so contending, however, is that there is absolutely nothing whatsoever wrong with Cisco having hired 60 Avaya employees – any more than there is something wrong with Avaya having hired by Cisco's estimation approximately 60 Cisco employees or populating its leadership ranks with former Cisco employees.  It bespeaks of nothing more than an industry whose employees routinely and lawfully migrate between companies seeking better career opportunities.  Indeed, all one need do is look at Avaya's own website to quickly discern that **Avaya** generally is looking for candidates with relevant experience.  See http://www.avaya.com/usa/careers/opportunities/professionals (seeking candidates who are looking to advance their careers or apply their "know-how" to new areas).  That experience or "know-how," of course, quite often comes from hiring from competitors.  Indeed, as discussed above, one of the key elements of Avaya's "Attack Cisco" strategy was to recruit and hire Cisco employees.  (*See* Wixted Decl., Exhibit G).[15]  Why is it ok for Avaya to initiate a strategy to hire Cisco employees, but when Cisco happens to hire from Avaya it somehow justifies

---

[15]   Avaya has designated Exhibit G as "Attorneys' Eyes Only."  While Defendants do not agree with this designation, Defendants have take appropriate steps to protect Avaya's designation (in accordance with the applicable Discovery Confidentiality Order and Local Civ. R. 5.3) by filing a motion to seal and sealing the Wixted Declaration.

initiation of a lawsuit and intrusive discovery into Cisco's business confidences?  It is not.

Moreover, a mere review of Avaya's public statements over the past year confirms that Avaya has not been remotely "crippled" by Cisco's purported targeted raiding.  Indeed, Avaya (at least outside the context of this case) holds itself out as thriving.  In this regard, attached to the Wixted Decl. as Exhibit H are various public disclosures from Avaya championing its success over the past 12 months.  Avaya's advocacy in this case is belied by its public rhetoric, which further underscores precisely why Avaya must do far more to justify the expansive and intrusive discovery it seeks.

The only other allegation to which Avaya cites to support its incursion into Cisco's confidences concerns a meeting of Cisco equipment resellers that occurred in the Boston-area in or about September, 2010.  Avaya claims that, upon information and belief (i.e., hearsay), that former Avaya employees now employed by Cisco made a presentation at that meeting and mentioned something about something called Session Initiation Protocol ("SIP").

First, Avaya – even to this day – has never advised what the statement was that was made and, indeed, only recently have disclosed the source of its information (after having been ordered to do so by Judge Wolfson).  Cisco has no idea to what Avaya is referring that is such a trade secret that would justify the

discovery it now seeks – let alone a lawsuit.  Indeed, in response to Cisco's

interrogatories asking for such information, Avaya mentioned nothing about any

statement heard by anyone at the Boxborough meeting.  (See Avaya's response to

Interrogatory No. 1, which is attached to the Wixted Decl. as Exhibit I).

Remarkably, and while the alleged statement is so inconsequential as to not even

warrant a reference in Avaya's interrogatory answers, it now makes the allegation

the linchpin to its pursuit of Cisco's proprietary information.

     Second, Avaya ignores that there is nothing secret about SIP.  SIP is a

world-wide, open source standard for establishing interoperability of various

communication technologies supporting unified communications.  All one need do

to understand what SIP is would be to look it up on Wikipedia.  (See

http://en.wikipedia.org/wiki/Session_Initiation_Protocol).  In fact, while Avaya

seems to suggest that SIP is some type of state secret, it actually has a detailed

"demo" video on its website describing Avaya's use of SIP.  (See

http://www1.avaya.com/campaign/demo/sip08/index.html).

     Third, insofar as Avaya will argue that someone associated with Cisco made

a statement regarding problems that Avaya has had with implementing SIP, Avaya

must be called upon to explain what is so secret about that?  Indeed, all one need to

do to find out about problems with Avaya's implementation of SIP is to talk to its

customers who have experienced problems with Avaya's use of SIP or, easier yet,

do an internet search, which will reveal a litany of such problems. (See Wixted

Decl., Exhibit J, which is a compilation of websites, articles, and other sources

discussing problems with Avaya's implementation of SIP).   The fact is that the

former employees of Avaya who presented on behalf of Cisco at the September,

2010 conference had been gone from Avaya for 20 months as of the time of the

conference.  Did it ever dawn on Avaya that in those 20 months some of its

problems with SIP implementation may have become known outside of the

confines of Avaya before demanding everything under the sun from Cisco?

     Avaya has reflexively argued it is entitled to the discovery it seeks because

Cisco has requested similar information from Avaya.  In so arguing, Avaya

myopically ignores that it is the party that put the information at issue.  For

example, Avaya has asserted that Cisco's hiring practices are improper; it must,

therefore, be prepared to produce information showing that it does not engage in

the same behavior about which it is complaining.  Moreover, to succeed on its

misappropriation claim, Avaya must first establish that the information allegedly

misappropriated is, in fact, a trade secret.  To that end, it must produce the

information it contends was a trade secret in order for Defendants to prepare

arguments that the information was not misappropriated, is of no value to them,

and/or is neither confidential nor a trade secret.  It is precisely all of those issues

that must be addressed **before** Avaya is entitled to use this lawsuit to intrude upon

Cisco's proprietary information.  If and only if Avaya can present substantial evidence to overcome these defenses should it be permitted further discovery from Cisco.  Otherwise, Avaya would be permitted to pervert discovery in this baseless unfair competition/trade secret misappropriation case into a judicially-sanctioned use of litigation to engage in its own unfair competition and misappropriation of a competitor's proprietary information.

Ironically, Avaya is brandishing a claim of unfair competition and trade secret misappropriation as a sword to unfairly compete with Cisco and to misappropriate Cisco's confidences.  Avaya's transparent tactic epitomizes the type of conduct against which the cases discussed above seek to protect by mandating a plaintiff to provide substantial bases for its claims before being entitled to discovery of its competitor's commercially sensitive information. Avaya already has been afforded significant discovery by way of depositions, document production, and an extraordinary forensic review.  It has utterly failed to make the substantial showing required by the law (or, for that matter, to muster any facts in support of its claims).  The Court should not entertain the discovery that Avaya seeks unless and until Avaya makes a far greater showing of a basis for its claims than it has presented to date.  Accordingly, Defendants respectfully request that the Court sustain Defendants' objections to Avaya's discovery requests.

### D.     Plaintiff's Discovery Requests Are Impermissibly Overbroad And Irrelevant To The Underlying Litigation.

Not only are Plaintiff's discovery requests premature on the record at this time, but they are wildly overbroad and irrelevant to the claims at issue in this litigation.

The following are but a few examples of Avaya's overreaching, burdensome and harassing requests.[16]

- Interrogatory No. 4 to Mr. Canha requests the identity of Mr. Canha's son's college friend "Luke," presumably so Avaya can subpoena "Luke" for a deposition in this matter. The sole purpose of this request is to harass Mr. Canha and his family and (his children's) friends. Avaya well knows that Luke (last name unknown) has no relevant information to provide--he merely assisted Mr. Canha in his attempt to capture his electronic contacts to an external Seagate hard drive. More importantly, it is undisputed that Mr. Canha had not even known that the download had worked and, in any event, it is undisputed that he never accessed the Seagate drive at any time since he attempted to download material to it (which has been confirmed by forensic expert and not challenged by Avaya's expert) and is no longer in possession of the Seagate drive. Attempting to drag Mr. Canha's son and his college buddy into this dispute is, to put it charitably, in poor form and far exceeds the proper scope of discovery. If anything, it demonstrates just how far that Avaya will go to improperly advance its "Attack Cisco" strategy.

- Interrogatory No. 8 to Cisco seeks the identity of every current and former Avaya employee that has been contacted by Cisco (or a recruiter on behalf of Cisco) relating to potential employment with Cisco. Interrogatory No. 9 seeks the identity of the Cisco employee(s) and recruiters that contacted the current and former Avaya employees. Document Request No. 19 seeks all documents relating to those communications. Similarly, Document Request No. 13 seeks all documents relating to Cisco's plans, strategies, or proposals to hire employees from Avaya. Would Avaya want Cisco to know its hiring plans? Of course not. These requests improperly seek access to the

---

[16]   A full summary of Cisco's objections are set forth in the chart filed concurrently herewith.

strategic and operational initiatives of Cisco (related to recruitment and hiring), the contents of which Avaya would not otherwise have access. More fundamentally, Avaya has no protectible interest in restraining ordinary competition and free movement within the labor market, which is precisely the aim of these requests. Not to mention, it would be a grave intrusion into the personal affairs of Avaya employees who might be interested in advancing their careers outside the walls of Avaya. No one interested in finding new employment wants its current employer to know he or she is looking. Finally, Avaya does not allege any facts – even upon information and belief – that anyone associated with Cisco has violated any restrictions on solicitation of Avaya employees. This multitude of requests are a fishing expedition with a real purpose of sending a message to current Avaya employees that Avaya management is watching their every movement in order to deter them from communicating with Cisco. This is just another example of Avaya's offensive and abusive use of the discovery process. The Court should not tolerate, let alone sanction, such tactics.

- Interrogatory Nos. 10 and 11 to Cisco seek the number of individuals in *North America* Cisco has contacted about potential employment; to whom Cisco has offered employment; the position offered to each candidate; and the entity for whom each candidate worked. Avaya has absolutely no basis to request any of this information, which is neither relevant to this litigation nor reasonably calculated to lead to the discovery of admissible evidence. And even if these requests sought relevant information, they are wildly overbroad. Indeed, the interrogatories are not even limited to Avaya employees, and instead seek information concerning *any* employee from *any* company in North America that Cisco has contacted about employment or offered employment.

- Document Request No. 33 seeks information reflecting any bonus, commission, or other payment made by Cisco to any recruiter for their services in placing *any* individual at Cisco in North America in *any* position since January 1, 2009, including the amount of said payment(s), the candidate for whom the payment was made, and the candidate's last employer. Like interrogatory nos. 10 and 11, Avaya has no basis to request this information, and the request is remarkably overbroad in any event.

- Document Request No. 25 seeks all documents relating to any monetary and non-monetary compensation, benefits, bonuses, or inducements that Cisco has offered, provided, or proposed to any former Avaya employee. This

request improperly seeks confidential compensation information which, if provided, would give Avaya an enormous competitive advantage  by disclosing what Cisco pays in the competitive marketplace for talent.  Cisco would be barred from sharing this information by virtue of antitrust law so there is no reason Avaya should have access to it here under subterfuge of a sham discovery request.

- Document Request No. 41 seeks documents describing the services and products through which Cisco competes with Avaya, and Request No. 42 seeks documents describing how Cisco's sales organization competes with Avaya.  These requests blatantly seek access to Cisco's confidential and proprietary information, and are wholly improper.

- Deposition Examination Topic No. 4 seeks testimony concerning the job duties and responsibilities of <u>every</u> former Avaya employee Cisco has hired since January 1, 2009; and

As discussed above, the scope of discovery as defined by Rule 26, "is not unlimited and may be circumscribed."  *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).  "[T]he simple fact that requested information is discoverable under Rule 26(a) does not mean that discovery must be had."  *Nicholas v. Wyndham Intl, Inc.*, 373 F.3d 537, 543 (3d Cir. 2004); *see also Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000) (explaining the party seeking discovery bears the burden to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence").  The burden remains on the requesting party to demonstrate that the requested documentation is relevant.  *Id.*; *see also Nestle Food Corp. v. Aetna Cas. & Surety Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990).  Consequently, "[d]iscovery is not permitted where the discovery sought is irrelevant to the claims at issue."  *NE Technologies, Inc. v.*

*Evolving Systems, Inc.*, No. 06-6061, 2008 WL 427768, * 5 (D.N.J. Sept. 12, 2008) (internal citation omitted).

Avaya cannot demonstrate an entitlement to the discovery it seeks. Avaya's Complaint alleges nothing more than its speculation that Cisco possesses certain of Avaya's <u>alleged</u> trade secrets regarding the implementation of SIP (which, in reality, is so-called "open source" technology) and that Cisco hired Mr. Canha as well as other, unnamed, former Avaya employees to gain access to Avaya's trade secrets. *See* Complaint ¶¶ 53-61, 83. From there, Avaya is off to the races, demanding – with no exaggeration – such overbroad and all encompassing information as *every* individual in North America that has been contacted by Cisco, or a recruiter on Cisco's behalf, *ever*, and information on *every* individual in North America that has *ever* been offered employment by Cisco. These interrogatories are not limited in time, scope, or even geography as they include ***all individuals*** throughout the country. Such demands amount to a classic – and impermissible – fishing expedition. *See, e.g., Zuk v. Eastern Pa. Psychiatric Inst. of Med. College of Pa.,* 103 F.3d 294, 299 (3d Cir. 1996) (explaining that "discovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it; the plaintiff must have some basis in fact for the action."); *Atkinson v. Middlesex County*, No. 09-4863, 2010 WL 398500, at * 3 (D.N.J. Jan. 28, 2010) (declining to permit discovery when "[i]t is clear to the

Court that Plaintiff is seeking to use discovery as a fishing expedition in order to support the basis of a speculative pleading."); *Professional Recovery Services, Inc. v. General Elec. Capital Corp.*, No. 06-2829, 2009 WL 137326, 4 (D.N.J. Jan. 15, 2009) ("To cast a wide net for discovery of information in the hopes that something of use may come back is the essence of a fishing expedition precluded by the rule of proportionality."). Accordingly, Defendants should be protected from responding to Avaya's discovery requests, which are both overbroad and irrelevant to the underlying litigation.

**E.      Avaya Should Be Sanctioned For Necessitating This Motion.**

FRCP 37(a)(5)(A) states that if a "motion is granted … the court must, after giving an opportunity to be heard, require the part or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees." As set forth above, Avaya is misusing and abusing the litigation process to advance its "Attack Cisco" campaign. Indeed, to say that Avaya has engaged in "scorched earth" litigation is a gross understatement. Avaya has propounded discovery requests seeking access to virtually every aspect of its business – including, without limitation, business strategies, competitive initiatives, product development plans, customers or potential customers, product pricing, and hiring practices and procedures – all without establishing a minimum

factual basis for its claims.  Avaya's conduct has caused Defendants to incur substantial attorneys' fees and merits the imposition of sanctions against Avaya.

## III.   CONCLUSION

For all of the foregoing reasons, Defendants Cisco Systems, Inc. and Mark Canha respectfully request that the Court grant their Motion for a Protective Order in its entirety.

Respectfully submitted,

/s/ Drew B. Wixted
Richard G. Rosenblatt
Drew B. Wixted
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, N.J. 08540
609.919.6626

*Attorneys for Defendants/Counterclaimants*
*Mark Canha and Cisco Systems, Inc.*

Dated:      April 8, 2011