UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AVAYA INC.,** | Civil Action No. 10-5881 (FLW) |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| **CISCO SYSTEMS, INC., et al.,** | |
| Defendants. | |

This matter comes before the Court upon a Motion for Leave to Amend their Counterclaims filed by Defendant Cisco ("Defendant" or "Cisco") [Docket Entry No. 76]. Cisco seeks to amend their previously filed counterclaims against Avaya, Inc. ("Plaintiff" or "Avaya") in order to bring additional claims for abuse of process and unfair competition. Avaya opposes Cisco's motion. The Court has fully reviewed and considered all arguments made in support of and in opposition to Defendant's motion. The Court considers Defendant's motion without oral argument pursuant to FED. R. CIV. P. 78. For the reasons set forth below, Defendant's motion is GRANTED.

**I.  Background and Procedural History**

The parties are business competitors in certain market spaces. In October 2010, Avaya filed its Complaint against Cisco following its Vice President's, Mark Cahna, resignation from his position with Avaya to take a position with Cisco. Avaya alleged, among other things, misappropriation of trade secrets and unfair competition. Cisco filed its Counter-Complaint in December 2010. The parties have engaged in discovery and disputes regarding discovery have resulted in additional motion practice. Cisco now brings this motion seeking to amend its counterclaims to include claims against Avaya for using this litigation in bad faith as an anti-competitive tool to further its "Attack Cisco" strategy. Specifically, Cisco asserts that Avaya is

"attempting to harass Cisco and its employees, stifle competition and slow or prevent the departure of Avaya employees who seek better job opportunities with Cisco, and gain access to Cisco's confidential and proprietary information." *See Defendant's Memorandum of Law in Support of their Motion* at 4.

Cisco states that leave to amend is liberally granted. Cisco asserts that it has legitimate bases for the relief it seeks and that the proposed amendments do not involve bad faith, undue delay or dilatory motive. Cisco further states that Avaya will not be prejudiced in any way by the amendments because Avaya has not yet answered Defendant's initial counterclaims and discovery is still progressing.

Cisco explains that to state a claim for abuse of process, a party must demonstrate "(1) an ulterior motive and (2) some further act after an issuance of process representing the perversion of the legitimate use of the process." *Fleming v. United Parcel Service, Inc.*, 604 A.2d 657, 681 (N.J. Super. Ct. 1992). Cisco contends that it has set forth in the proposed counterclaims various examples of "Avaya's improper motives and unfair, anti competitive and illegitimately abusive litigation practices." Cisco asserts that its proposed claims are not futile because it has provided substantial factual support so as to meet the standard for pleading a valid claim for relief. Cisco attaches the proposed Amended Counterclaims to its motion.

Avaya opposes Cisco's motion. Avaya asserts that Cisco has accused Avaya of abuse of process in an effort to intimidate and inhibit Avaya's ability to pursue its own claims against Cisco. Avaya argues that Cisco's motion would fail as futile because Cisco failed to establish that Avaya had any "ulterior motive" or that Avaya committed any "further acts" as required to state a claim for abuse of process. Further, Avaya contends that "no case in New Jersey has ever recognized the tort

2

of unfair competition in any circumstances that are remotely similar to those at issue here." *See Plaintiff's Memorandum of Law in Opposition to Defendant's Motion* at 2. Avaya also asserts that the timing of Cisco's motion is indicative of Cisco's improper motive to hinder Avaya's ability to pursue its claims. At the time Cisco's motion was filed, Avaya was preparing for a two-day hearing on their motion for preliminary injunction.

Avaya first addresses the alleged futility of Cisco's motion. Avaya states that Cisco must allege facts sufficient to demonstrate that it is able to satisfy the required elements of its proposed new counterclaims. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 556 (2007). Avaya contends that Cisco has not alleged facts in support of its abuse of process claim which could satisfy either the "ulterior motive" or the "further act" requirements to plausibly demonstrate any entitlement to relief.

With respect to the "ulterior motive" element of an abuse of process claim, Avaya posits that "the crux of a case cannot constitute the requisite 'ulterior motive' as a matter of law." *Falzo v. County of Essex*, 2005 WL 2129927 (D.N.J. Aug. 31, 2005). Avaya concludes that the "ulterior motives" alleged by Cisco in this motion are nearly identical to Avaya's claims as alleged in their Complaint; thus, Cisco has failed to establish an "ulterior motive" by referencing Avaya's claims. Avaya further states that there is nothing improper about the relief that it seeks in the form of an injunction prohibiting the solicitation of its employees by Cisco in addition to monetary damages and other relief. Therefore, Avaya contends that its relief cannot suffice as an "ulterior motive." Finally, Avaya argues that the discovery it has conducted cannot be its "ulterior motive" because Avaya is entitled to the discovery it has propounded. Further, Avaya points out that Cisco has propounded identical discovery requests on Avaya. Avaya asserts that this indicates that there is no foundation

for this motion.

With respect to the "further acts" aspect of the abuse of process claim, Avaya again argues that Cisco has failed to sufficiently plead this element. Avaya states that "it is well settled that neither the commencement of a lawsuit nor use of the discovery process constitute "further acts" as required to state a claim for abuse of process." *Component Hardware Group, Inc.*, 2007 WL 2177667, at *4. Avaya further argues that "Courts have only found parties to have engaged in 'further acts' in circumstances involving far more drastic conduct outside the course of normal litigation, such as seeking 'attachment, execution, garnishment, sequestration proceedings arrest, and criminal prosecution'." *D&D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, 2007 WL 4554208, at *31 (D.N.J. 2007).

Avaya argues that Cisco's proposed unfair competition claim is futile as well. Avaya states that an unfair competition claim must be premised upon improper or illegal conduct. *Mercedes-Benz USA, LLC v. ATX Group., Inc.*, 2010 WL 3283544, at *13 (D.N.J. 2010). Avaya contends that, in this matter, Cisco is claiming that the improper or illegal conduct which underpins the unfair competition counterclaim is Avaya's alleged abuse of process. Because Avaya has concluded that the premise of Cisco's unfair competition claim (the alleged abuse of process) fails as a matter of law, Avaya argues that Cisco has failed to state an unfair competition claim. Avaya further contends that Cisco's position is not supported by any New Jersey case law.

Avaya next argues that Cisco's proposed unfair competition claim is futile because it is barred by the Noerr-Pennington doctrine which, Avaya explains, immunizes a party's efforts to vindicate its rights through legal action. *California Motor Transportation v. Trucking Unlimited*, 404 U.S. 508 (1972). Avaya states that "only in cases where the original suit is purely a sham can

a claimant overcome the protection of the Noerr-Pennington doctrine.  *See California Motor Transportation*, 404 U.S. at 511.  It is Avaya's position that Cisco has not established that this case fits into the "sham" exception; therefore, Avaya concludes that the claims are futile.

Avaya also argues that Cisco has unduly delayed seeking leave to amend its counterclaims.  Avaya filed its Complaint in October 2010 and Cisco filed its Counter-Complaint in December of that same year.  To the extent that Cisco argues that Avaya is seeking "unprecedented and illegal relief," Avaya states that this information was available to Cisco in October 2010 in the initial Complaint.  In addition, Avaya states that they propounded discovery upon Cisco and that they provided a copy of the alleged "threatening letter" to a former Avaya employee to Cisco in November 2010.  Therefore, Avaya contends that Cisco has not properly explained why these counterclaims were not included in its original Counter-Complaint or why Cisco waited so long to seek leave to file amended counterclaims.  Avaya again points to the timing of Cisco's filing of this motion and suggests that Cisco chose this timing for an "improper tactical reason."

Avaya finally argues that it will suffer prejudice as a result of the amended counterclaims.  Avaya states that it has spent "substantial time and resources searching for and collecting documents and information that are relevant to pleadings."  Although discovery is at a standstill, Avaya states that it has made "extensive efforts to conduct and internal investigation into its claims and Cisco's stated defenses."  Avaya does not further explain how it would be prejudiced.

In response to Avaya's opposition, Cisco states that it has provided sufficient factual support for its claims and that Avaya has failed to demonstrate that it would be unduly prejudiced by the granting of this motion.  Cisco is confident that discovery on these issues will reveal further examples of Avaya's "ulterior motives" and will reveal that Avaya's unfair competition claim

against Cisco is without merit. Cisco states that its counterclaims explain, in detail, how Avaya is engaging in conduct which is similar to the conduct about which Avaya complains in their Complaint against Cisco. Therefore, Cisco argues that Avaya "cannot have it both ways; it cannot continue to pursue its 'unfair competition' claim while opposing Cisco's effort to pursue the very same claim based upon the very same allegations." *See Defendant's Reply Memorandum* at 3.

Cisco reiterates that it believes that Avaya is "using the legal process as a tactical weapon to further its 'Attack Cisco' plan." *See Defendant's Reply* at 8. Cisco sets forth specific examples of Avaya's "ulterior motives" in its proposed counterclaims. Cisco discusses alleged threats made to a former Avaya employee who is now employed by Cisco, Emerick Giorgetti, as well as several other scenarios which it believes demonstrate Avaya's attempt to "harass and intimidate its employees to prevent them from accepting employment with Cisco and to send a message to other employees that Avaya will find out if they communicate with Cisco." *Proposed Amended Counterclaims* at Paragraph 68. Cisco believes that the examples which it provides of Avaya's "abusive, coercive, and improper behavior are sufficient to state a claim for abuse of process."

Further, Cisco argues that it has sufficiently established that Avaya engaged in "further acts" to accomplish its "ulterior motives." Cisco again refers to the alleged harassment of Emerick Giorgetti, to discovery requests seeking the identities of all current Avaya employees who have been in contact with Cisco to explore potential employment opportunities, and to Avaya's motion to compel Cisco to provide the names of current Avaya employees who unsolicitedly contacted Cisco to explore employment opportunities. Cisco concludes that "this conduct, which perverts the legitimate use of the judicial process, constitutes 'further acts' required to state a claim for abuse of process." *See Giordano v. Claudio*, 714 F. Supp. 2d 508 (E.D. Pa 2010).

Cisco clarifies that its proposed counterclaim for unfair competition is not based solely on Avaya's filing of their Complaint. Rather, Cisco insists it was Avaya's post-filing conduct which caused Cisco to seek to amend. Cisco again asserts that Avaya has engaged in the very same conduct of which it complains in their Complaint; namely, the hiring of their competitor's employees. Therefore, Cisco concludes that it would be unfair to allow Avaya to pursue its claims for unfair competition and deny Cisco the same opportunity. Cisco also contends that it would be more efficient to allow them to amend their counterclaims. Otherwise, Cisco states that it would be forced to file a parallel action against Avaya to pursue their rights.

Cisco lastly addresses Avaya's Noerr-Pennington argument. Cisco states that the Noerr-Pennington doctrine is inapplicable to Cisco's claims because the unfair competition to which Cisco refers does not relate to Avaya's filing of this suit. Rather, Cisco states that its argument focuses on Avaya's post-filing, anti-competitive conduct. *See International Motor Contest Assoc., Inc. v. Staley*, 434 F. Supp. 2d 650, 663 (N.D. Iowa 2006). Additionally, Cisco states that the Third Circuit has held that Noerr-Pennington immunity, which is an affirmative defense, provides only a defense to **liability**, not immunity from **suit**. *We, Inc. v. City of Philadelphia*, 174 F.3d 322, 328 (3d Cir. 1999). Therefore, Cisco states that, while Avaya could ultimately persuade this Court or a jury that its petitioning is protected by the First Amendment, Avaya cannot use the Noerr-Pennington doctrine to bar Cisco's claim for unfair competition.

In addition, Cisco argues that it has no obligation to plead facts in its counterclaim to anticipate that defense. However, even if this were a requirement, Cisco believes that it has sufficiently demonstrated that Avaya's litigation is a "sham" and thus fits under an exception to the Noerr-Pennington doctrine. Cisco again explains how Avaya continues to pursue its claims for, and

engages is discovery regarding, "unfair" hiring practices; even though Avaya engages in the very same conduct which they allege is "unfair" and improper. Cisco also describes how Avaya continues to seek relief which Cisco alleges is "unprecedented and illegal." Cisco relies on statements made by Judge Wolfson which indicate that "she would likely **never** grant the requested relief" and on a declaration from the Justice Department which Cisco claims establishes that relief such as the injunctive relief requested by Avaya is illegal and in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Finally, Cisco contends that it has successfully pleaded that Avaya's filing and pursuit of this litigation is a sham because it has alleged that Avaya's unfair competition claim has absolutely no "indicia of success," and is "rife with abusive intent." *Zeller v. Consolini*, 758 A.2d 376, 382 (Conn. App. Ct. 2000).[1]

**II. Analysis**

Pursuant to FED.R.CIV.P. 15(a)(2), leave to amend the pleadings is generally given freely. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id*. However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v.*

---

[1] In the event the Court determines that Cisco has insufficiently pled Avaya's filing and prosecution of this litigation as a "sham," Cisco respectfully requests that the Court deny its motion without prejudice so that it is afforded the opportunity to revise its proposed Amended Counterclaims so as to add sufficient allegations of sham litigation.

*Wilson*, 393 F.3d 390, 400 (3d Cir. 2004).

Here, Cisco asserts that it brought this motion in a timely manner, that the proposed amendments do not involve bad faith, undue delay or dilatory motive, and that Avaya will not be prejudiced by these amendments. In contrast, Avaya asserts that it will be prejudiced by the proposed amendments, that Cisco waited an improper amount of time before seeking leave to amend without any explanation, and that Cisco's proposed amendments should be denied as futile. The Court shall address these issues in turn.

### A. Prejudice to Avaya

The Court is unpersuaded that Avaya would be prejudiced by the proposed amendments. In deciding whether to grant leave to amend under Rule 15(a)(2), "prejudice to the non-moving party is the touchstone for the denial of the amendment." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quoting *Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction. *See Long*, 393 F.3d at 400.

A mentioned above, Avaya states that it has spent "substantial time and resources searching for and collecting documents and information that are relevant to pleadings" and Avaya states that it has made "extensive efforts to conduct and internal investigation into its claims and Cisco's stated defenses." Even assuming that this is true, it is unclear how these statements support Avaya's

argument that it would be prejudiced and Avaya fails to give other reasons as to why, or how, it would be prejudiced by the addition of the proposed counterclaims. Both parties have spent substantial time and resources developing their cases and preparing their pleadings and defenses. Given that the case is still in its relatively early stages and that the focus up to this point has been, in large part, on the claims against Mr. Cahna, it is expected that the parties will need to expend even *more* time and resources in order to proceed and eventually complete this litigation. Avaya admits that discovery was at a standstill at the time this motion was filed. The parties have had significant discovery disputes which have resulted in Court intervention. Additionally, Avaya does not deny Cisco's assertion that Avaya has not yet answered Cisco's initial counterclaims.

### B. Undue Delay

Avaya contends that Cisco has delayed the filing of its Motion to Amend for specific, improper and tactical reasons. Delay alone, however, does not justify denying a motion to amend. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). Rather, it is only where delay becomes "'undue,' placing an unwarranted burden on the court, or . . . 'prejudicial,' placing an unfair burden on the opposing party" that denial of a motion to amend is appropriate. *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d Cir. 1984). Moreover, unless the delay at issue will prejudice the non-moving party, a movant does not need to establish a compelling reason for its delay. *See Heyl & Patterson Int'l, Inc. v. F. D. Rich Housing of Virgin Islands, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981). As discussed above, Avaya fails to establish that it has been, or would be, prejudiced by this alleged delay in filing. Further, the Court remains unpersuaded that Cisco purposefully waited to file this motion until Avaya was busy preparing for a two-day hearing. Cisco

consented to a one-month adjournment of that motion date and Cisco certifies that the timing of the filing of this motion was due to Avaya's post-filing conduct.

### C. Futility

A motion to amend is also properly denied where the proposed amendment is futile. An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.,*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted). In determining whether an amendment is "insufficient on its face," the Court employs the Rule 12(b)(6) motion to dismiss standard (*see Alvin*, 227 F.3d at 121) and considers only the pleading, exhibits attached to the pleading, matters of public record and undisputedly authentic documents if the party's claims are based upon same. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). When considering whether a pleading would survive a Rule 12(b)(6) motion, the Court must accept all facts alleged in the pleading as true and draw all reasonable inferences in favor of the party asserting them. *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face[.]'" *Duran v. Equifirst Corp.*, Civil Action No. 2:09-cv-03856, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In other words, the facts alleged must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

While a pleading does not need to contain "detailed factual allegations," a party's "obligation

11

to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citation omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. In addition, although the Court must, in assessing a motion to dismiss, view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

Avaya asserts first that Cisco has failed to set forth a sufficient factual basis so as to plead "abuse of process" and "unfair competition" and that, even if those claims had been sufficiently pleaded, Cisco's claims are barred by Noerr-Pennington doctrine.

### 1. Abuse of Process

The elements of an abuse of process claim are: "(1) an ulterior motive and (2) some further act after an issuance of process representing the perversion of the legitimate use of the process." *SBK Catalogue Partnership v. Orion Pictures*, 723 F.Supp. 1053, 1067 (D.N.J.1989); citing *Fielder Agency v. Eldan Constr. Corp.*, 152 N.J.Super. 344, 348, 377 A.2d 1220 (Law Div.1977). "[A]buse of process will not lie against a party unless that party has demonstrably used process after its issuance solely to coerce or injure his adversary." *SBK Catalogue*, *supra*, 723 F.Supp. at 1067-1068.

With respect to the "ulterior motive," Avaya asserts that Cisco cannot rely on Avaya's claims as set forth in its Complaint as evidence of the "ulterior motive." *See Falzo v. County of Essex,* 2005 WL 2129927 (D.N.J. Aug. 31, 2005). (A plaintiff must have a "completely separate ulterior motive" that is unrelated to the cause of action in the initial complaint.) However, Cisco clarifies that it is basing its abuse of process claim on Avaya's post-filing conduct and Cisco gives several specific

examples of Avaya's conduct which Cisco believes demonstrates an "ulterior motive." The motives which Cisco provides in its proposed Amended Complaint are to further Avaya's "Attack Cisco" strategy as well as "to harass and intimidate its employees to prevent them from accepting employment with Cisco and to send a message to other employees that Avaya will find out if they communicate with Cisco." *Proposed Amended Counterclaims* at Paragraph 68. Indeed, these "ulterior motives" are separate and distinguishable from Avaya's claims of unfair competition and misappropriation of trade secrets. Thus, Cisco has sufficiently pled the first element of the abuse of process claim.

Next, the Court must determine whether Cisco set forth "further acts" which represent the perversion of the legal process. Avaya argues that the commencement of the lawsuit or the use of the discovery process cannot constitute "further acts" and Avaya cites to a decision in this Court in support of this proposition. *Component Hardware Group, Inc.*, 2007 WL 2177667, at *4. However, the Court finds that Avaya's reliance on that decision is slightly misplaced. It is well settled that the "further acts" prong cannot be satisfied by the filing of the complaint; however, *Component Hardware* makes no general ruling as to the use of discovery. What *Component Hardware* and similar cases do establish is that whether or not the "further acts" requirement is fulfilled turns on whether or not the act served to "coerce or injure [the] adversary." *See Component Hardware,* at *5; *SBK Catalogue*, *supra,* 723 F. Supp. at 1066. Cisco refers to examples of Avaya's specific conduct, including the harassment of Emerick Giorgetti, which it believes demonstrates Avaya's intent to stifle competition, further the "Attack Cisco" strategy, and prevent Avaya employees from seeking employment with Cisco. Thus, Cisco has set forth factual allegations which suggest that Avaya made "further acts" which were used to "coerce or injure" Cisco.

13

For the reasons set forth above, the Court finds that Cisco has adequately pled facts to state a claim that relief is plausible. The Court further finds that the proposed Counterclaims are sufficient to survive the 12(b)(6) motion to dismiss standard and do not fail as futile.

### 2. Unfair Competition Claim

Avaya's main argument in this respect is that, because they assert that Cisco's abuse of process claim fails as a matter of law, the unfair competition claim also must fail as futile. As discussed above, the Court finds that Cisco has sufficiently pled its abuse of process claim. In addition, as Cisco points out, Avaya has made the very same allegations against Cisco for nearly the same alleged conduct. To allow Avaya to proceed on these grounds and to deny Cisco the opportunity would be unjust. Also, to deny Cisco the opportunity to raise those allegations in this proceeding would be inefficient as Cisco has informed the Court that they would likely resort to bringing the unfair competition claims against Avaya in a separate action.

### 3. Noerr-Pennington Doctrine

The *Noerr-Pennington* Doctrine exists, in general, to protect parties' First Amendment, Free Speech rights. It first existed in the anti-trust arena, but has been expanded to other areas including tortious conduct with its main purpose being to protect the right to petition. *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (U.S.Cal. 1972); *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155 (3d Cir. 1988).

In analyzing the application of the *Noerr-Pennington* Doctrine, courts have distinguished between private and public defendants. *Segni v. Commercial Office of Spain*, 816 F.2d 344 (7th Cir.

1987). When applying the *Noerr-Pennington* Doctrine to public defendants, the 3rd Circuit Court of Appeals adopted the 7th Circuit approach to create immunity from suit, reasoning that immunity from suit was required "to spare state officials the burdens and uncertainties of the litigation itself as well as the cost of an adverse judgment." *We, Inc. v. City of Philadelphia, Dep't of Licenses & Inspections*, 174 F.3d 322, 329 (3d Cir. Pa. 1999) quoting *Segni*, 816 F.2d 344. However, in applying the *Noerr-Pennington* Doctrine to private defendants, the *We, Inc.* Court stated that, "we have been unable to find any case holding that the burden of litigation on a private defendant justifies an immunity from suit as well as a defense to liability." *Id*, 174 F.3d at 329. Therefore, in the case of the application of the *Noerr-Pennington* Doctrine to private defendants, the Court found that "the "*Noerr-Pennington* doctrine does not provide an 'immunity from suit' but rather only a defense against liability." *Id* at 326. This rationale has been confirmed in recent decisions and has been adopted in other districts. *See Robinson v. Hartzell Propeller, Inc.*, 454 F.3d 163, 171-172 (3d Cir. Pa. 2006) ("The possibility that the 'burdens of suit . . . might deter [public officials] from vigorous execution of their office [was] a consideration missing in the case of the private defendant'.")(internal citations and quotations omitted); *Acoustic Sys. v. Wenger Corp.*, 207 F.3d 287, 290 (5th Cir. 2000) ("The *Noerr-Pennington* doctrine does not provide anyone a right not to stand trial"). Ultimately, the Third Circuit held that, "[w]ithout diminishing the importance of the First Amendment right to petition that is protected by the *Noerr-Pennington* Doctrine, ... a right not to be burdened with a trial is simply not an aspect of this protection." *We, Inc.*, 174 F.3d at 330.

In the case presently before the Court, both parties are private entities. Cisco's claims against Avaya, therefore, are not barred by *Noerr-Pennington* as Avaya asserts. Avaya may properly raise this doctrine as a defense to liability in their responsive pleadings.

### III. Conclusion

For the reasons set forth above; and the Court having considered this matter pursuant to FED.R.CIV.P. 78, and for good cause shown,

IT IS on this 14th day of November, 2011,

ORDERED that Defendant's motion to Amend Counterclaims is GRANTED.

ORDERED that Defendant is to serve their Amended Counterclaims on Plaintiff within ten (10) days of the date of this Order.

ORDERED that Plaintiff shall file responsive pleadings within twenty-one (21) days of the date of filing of Defendant's Amended Counterclaims.

ORDERED that the Clerk of the Court terminate this motion [Docket Entry No. 76] accordingly.

s/ Tonianne J. Bongiovanni
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**