*NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| AVAYA, INC., | : | Civil Action No. 10-5881(FLW) |
| Plaintiff, | : | **OPINION** |
| v. | : | |
| CISCO SYSTEMS, INC. et al., | : | |
| Defendants. | : | |

**WOLFSON, United States District Judge**:

This contentious litigation involves two telecommunication competitors accusing each other of engaging in various illegal anti-competitive conduct. In this Opinion, the Court determines whether the Magistrate Judge erred in permitting Defendant Cisco Systems, Inc. ("Defendant" or "Cisco") leave to amend its counterclaims against Plaintiff Avaya, Inc. ("Plaintiff" or "Avaya"). Plaintiff appeals the Magistrate Judge's decision contending that the two proposed counterclaims – abuse of process and unfair competition – have no basis in fact or law. For the reasons explicated herein, the Court vacates the Magistrate Judge's decision and denies Cisco's motion to amend its counterclaims. However, Cisco shall have an opportunity to re-plead its unfair competition claim consistent with this Opinion; in that connection, Cisco must file its Amended Counterclaim within thirty days from the date of the Order accompanying this Opinion.

## BACKGROUND

On this appeal, the Court takes the allegations in the Amended Counterclaims of Cisco as true. Avaya sells and distributes hardware and software for call/contact centers and corporate unified

messaging. Am. Count., ¶ 4. Cisco competes with Avaya in those market spaces. Id. In October 2010, Avaya initiated this suit against Cisco alleging various claims, including misappropriation of trade secrets and unfair competition. In response, Cisco filed counterclaims against Avaya and moved to amend its Counterclaims before the Magistrate Judge to include claims for abuse of process and unfair competition.

According to Cisco, because Cisco has been gaining significant market share in call center software and messaging, Avaya developed a strategy, known as "Attack Cisco," which includes a plan to target and recruit key hires away from Cisco. Id. at ¶ 5. In furtherance of such a plan, as alleged, Avaya has been using litigation or the threat of litigation in bad faith against Cisco as an anti-competitive tool seeking to: (1) harass Cisco and its employees; (2) stifle competition and slow or prevent the departure of Avaya employees who are seeking employment with Cisco; and (3) gain access to Cisco's confidential and proprietary information. Id. at ¶ 6. For example, Cisco complains, among other things, that Avaya utilizes litigation, including the current case, to harass or intimidate its own employees from entertaining the possibility of working for Cisco. Id. at ¶¶ 13-15. In addition, Cisco avers that Avaya has hired high-level Cisco employees in order to, inter alia, unfairly compete with Cisco. Id. at ¶ 17. In totality, Cisco maintains that Avaya developed this strategy to chill competition between the companies.

The Magistrate Judge issued an Opinion dated November 14, 2011, granting Cisco's motion to amend its Counterclaims. With respect to the abuse of process claim, the Magistrate Judge found that Cisco had sufficiently pled that Avaya had an ulterior motive in pursing litigation against Cisco; that is, Avaya's litigation tactics furthered its "Attack Cisco" plan by allegedly harassing and intimidating Avaya's own employees from accepting employment with Cisco, and it would send a

stern message to other employees who were communicating with Cisco. See Opinion dated November 14, 2011, p. 13. Moreover, the Magistrate Judge found that Cisco's allegations that Avaya employed untoward discovery tactics to coerce or injure Cisco were sufficient to meet the pleading requirements for "further acts" under the abuse of process claim. See Id. Finally, Avaya argued before the Magistrate Judge that Cisco's unfair competition claim should fail as a matter of law because Cisco did not properly plead its abuse of process claim. Id. at p. 14. However, because the Magistrate Judge found that the abuse of process claim was sufficiently pled, she rejected Avaya's contention in that regard.

Following the Magistrate Judge's decision, Avaya's timely appeal ensued.

## DISCUSSION

**I.     Standard of Review**

There is no dispute by either party that this Court should review the Magistrate Judge's decision by a clearly erroneous standard. Indeed, when a party appeals a Magistrate Judge order on a non-dispositive motion, the District Court must set aside any part of the order that is "clearly erroneous or contrary to law." L. Civ. R. 72.1(c)(1)(A); see Trotman v. Monmouth Univ., No. 09-6163, 2012 U.S. Dist. LEXIS 3747, at *4-5 (D.N.J. Jan. 12, 2012). In that regard, a finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Thomas v. Ford Motor Co., 137 F. Supp. 2d 575, 579 (D.N.J. 2001). (quoting Lo Bosco v. Kure Eng'g Ltd., 891 F. Supp. 1035, 1037 (D.N.J. 1995)). "Where a Magistrate Judge is authorized to exercise his or her discretion in determining a non-dispositive motion, the decision will be reversed only for an abuse of that discretion." Id. (citing Lithuanian Commerce Corp. v. Sara Lee Hosiery, 177 F.R.D. 205, 214

(D.N.J. 1997)); Kresefsky v. Panasonic Communications and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996)).  Legal conclusions, however, will be reviewed de novo. Id. (citing Lithuanian Commerce Corp., 177 F.R.D. at 214; Haines v. Liggett Group, Inc., 975 F.2d 81, 91 (3d Cir. 1992)).

The legal standards used by the Magistrate Judge in deciding the parties' underlying motion are not in dispute.  Pursuant to Fed R. Civ. P. 15(a)(2), leave to amend is generally given freely. Foman v. Davis, 371 U.S. 178, 182 (1962).  The court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the party of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." Id.  Here, because Avaya does not appeal the Magistrate Judge's findings regarding prejudice or undue delay, the Court focuses on the issue of futility.

To establish futility, the party opposing the motion to amend must demonstrate that the proposed amendments to the pleadings would not survive a motion to dismiss for failure to state a claim or lack of subject-matter jurisdiction. See Massarsky v. Gen. Motors. Corp., 706 F.2d 111, 125 (3d Cir. 1983). When making this determination, courts apply the same standard of legal sufficiency as applies under Rule 12(b)(6): "factual allegations must be enough, when taken as true, to state a claim for relief that is plausible on its face." Travelers Indem. Co. v. Dammann & Co., 592 F.Supp.2d 752, 763 (D.N.J. 2008).  And, in that regard, dismissal is appropriate only if, accepting all of the facts alleged in the pleadings as true, the party has failed to plead "enough facts to state a claim to relief that is plausible on its face . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

**II.     Abuse of Process**

Unlike malicious prosecution, which is illegitimate from its inception, "an abuse of process occurs when a prosecution is initiated legitimately [but] thereafter is used for a purpose other than that intended by the law." Mitchell v. Guzick, 138 Fed. Appx. 496, 502 (3d Cir. 2005)(citation omitted).  To properly plead the tort of abuse of process, also known as malicious abuse or misuse of process, a party must allege sufficiently these elements: (1) ulterior motive; and (2) "further act after the issuance of process representing the perversion of the legitimate use of the process." See Tare v. Bank of Am., No. 07-583, 2009 U.S. Dist. LEXIS 23125, at *18 (D.N.J. Mar. 24, 2009) (citing Simone v. Golden Nugget Hotel & Casino, 844 F.2d 1031, 1036-37 (3d Cir. 1988)).

"Process," which is defined narrowly in the context of the tort of abuse of process, refers not to "all proceedings in a legal action," but rather to "certain products of litigation that a court issues, such as a 'summons, mandate, or writ used by a court to compel the appearance of the defendant in a legal action or compliance with its orders.'" Jewett v. IDT Corp., No. 04-1454, 2007 U.S. Dist. LEXIS 67284, at *7 (D.N.J. Sept. 11, 2007) (quoting Ruberton v. Gabage, 280 N.J. Super. 125, 131 (App. Div. 1995)).  In other words, this narrow use of "process" must be distinguished from the general use, as being "the whole course of proceedings in a legal action." Ruberton, 280 N.J. Super at 131; see Hoffman v. Asseenontv.Com, Inc., 404 N.J. Super. 415, 431-42 (App. Div. 2009).  The typical abuse of process claim involves leveraging some attachment process or complaint in order to achieve some other end. See, e.g., Wozniak v. Pennella, 373 N.J. Super. 445 (App. Div. 2004) (addressing claim that a landlord filed a criminal complaint against a tenant, and then attempted to use the criminal complaint as leverage to induce the tenant to withdraw his pending civil action against the landlord); Stolinski v. Pennypacker, 772 F. Supp. 2d 626, 645 (D.N.J. 2011); Mosley v.

Del. River Port Auth., No. 99-4147, 2000 U.S. Dist. LEXIS 22402, at *33-34 (D.N.J. Aug. 7, 2000)("abuse of process claims are generally reserved for cases in which a person uses the process to coerce the plaintiff into doing something or to extort something from the plaintiff; in short, for a collateral purpose that is not properly obtainable and is totally extraneous to the legitimate use of the process.").

The second element of "further acts" may be met by pleading that a party "had secured issuance of the process without reason or probable cause as evidence that [its] ultimate intent was to use it for a purpose ulterior to the one for which it was designed." Tedards v. Auty, 232 N.J. Super 541, 550 (App. Div. 1989)(citing Soos v. Soos, 14 N.J. Misc. 381 (N.J. Ch. 1936)). As such, the ulterior motive can be inferred from the "improper act." See Rojas v. City of New Brunswick, No. 04-3195, 2008 U.S. Dist. LEXIS 57974, at *87 (D.N.J. Jun. 4, 2008) (citing Ash v. Cohn, 119 N.J.L. 54 (1937)). If the act is proper, however, the motive is immaterial, see Rojas, 2008 U.S. Dist. LEXIS 57974 at *87 (internal citation omitted), because "[i]n the absence of some coercive or illegitimate use of the judicial process, there can be no claim for its abuse." See Id. (citing Penwag Prop. Co. v. Landau, 148 N.J. Super 493, 499 (App. Div. 1977)).

Moreover, a perversion of an otherwise legitimate process exists only where the process is used to "coerce or oppress" another party or the process is used in a manner not contemplated by law. See Simone, 844 F.2d at 1036; Tedards, 232 N.J. Super at 550 (internal citation omitted). It is important to note that where a party carries out process to its authorized conclusion, albeit with bad intentions, there is no valid claim for abuse of process. See Gambocz v. Apel, 102 N.J. Super. 123, 128 (App. Div. 1968).

Here, Cisco alleges that Avaya's abusive conduct after the filing of this lawsuit is motivated by Avaya's "Attack Cisco" strategy. In particular, Cisco maintains that Avaya is using this litigation to harass and intimidate its own employees from accepting employment with Cisco. The Magistrate Judge found those allegations sufficient to meet the ulterior motive element. As for the second element, the Magistrate Judge determined that Cisco's allegations regarding the harassment of Mr. Giorgetti, a former Avaya employee, now employed by Cisco, and certain discovery abuses were sufficient to meet the "further acts" requirement. On appeal, Avaya challenges the Magistrate Judge's decision on the basis that none of Cisco's allegations meet the legal standard for abuse of process.

In its Counterclaim, Cisco accuses of Avaya of using this litigation or the threat of future litigation in bad faith to harass Cisco and its employees, stifle competition and gain access to Cisco's confidential information. The premise of Cisco's abuse of process claim hinges on various examples of alleged wrongdoing on the part of Avaya. First, Cisco alleges that Avaya is attempting to stifle competition by seeking an injunction in this case to prohibit Cisco from soliciting or inducing any Avaya employee to work for Cisco. Am. Count., ¶ 7. Moreover, Cisco criticizes Avaya for continually intimidating Cisco's employees, as well Avaya's own employees. As an example, Cisco details a letter sent by Avaya to its former employee, Mr. Giorgetti. Cisco claims that the purpose of the letter is to threaten Mr. Giorgetti in order for him to comply with Avaya's request, i.e., refrain from misappropriating Avaya's confidential information and trade secrets. Id. at ¶ 14.

Cisco also avers that Avaya is improperly seeking, by way of discovery requests, "the identities of current Avaya employees who have been in contact with Cisco . . . [in order to] harass or intimidate its own employees in a way to deter them from even entertaining the possibility of

joining Cisco." Id. at ¶ 13. Along the same line, Cisco lists various discovery requests made by Avaya that it contends are overly broad and irrelevant. Cisco surmises that those requests were served for the sole purpose of gaining confidential information from Cisco. See Id. at ¶¶ 23-31.

These particular "motives" or "acts" – even if improper – cannot form the basis for an abuse of process claim. The inquiry here is whether Avaya illegitimately used any process, in the context of this litigation, to coerce or oppress another party. Turning first to the letter sent to Mr. Giorgetti, the Magistrate Judge found that this particular act, inter alia, constitutes an oppressive further act. Defending the Magistrate Judge's determination, Cisco argues that it has met the "further act" element by pleading that Avaya abused the process by sending the Giorgetti letter to deter the mobility of labor talent by using the judicial process, and the threatened subpoena power of this Court, to purposefully harass and intimidate a former employee. In support of its position, Cisco relies on Component Hardware Group, Inc. v. Trine Rolled Moulding Corp., No. 05-891, 2007 U.S. Dist. LEXIS 54900 (D.N.J. Jul. 27, 2007). In that case, the defendant asserted a counterclaim of abuse of process against the plaintiff based on the allegation that the plaintiff was abusing the process by seeking an injunction that would have wrongfully interfered with the defendant's ability to compete in the market. Id. at *17. The court held that the plaintiff did not suffer any special grievance because the injunction was never granted, and a potential harm can never qualify as a grievance. Id. at *18.

Component Hardware does not lend support for Cisco's position, however. In that case, the allegations of abuse focused on the process of an injunction, which the defendant alleged that the plaintiff attempted to use for unfair competition purposes. Here, by pointing to the Giorgetti letter, Cisco has not identify that Avaya used any particular procedural process or otherwise. As indicated

earlier, the process in the context of this type of claim is defined narrowly. In order to satisfy process, there must be allegations that Avaya misused or abused "certain products of litigation that a court issues, such as a 'summons, mandate, or writ used by a court to compel the appearance of the defendant in a legal action or compliance with its orders." Jewett, 2007 U.S. Dist. LEXIS 67284 at *7; Ruberton, 280 N.J. Super at 131. As such, the letter sent to Mr. Giorgetti – which is not a part of any judicial process in this litigation – cannot be considered process as a matter of law in the context of this claim.[1] So, even if the letter was sent to intimidate Mr. Giorgetti, as Cisco suggests, there could be no claim for abuse of process. Also, while Cisco mentions that Avaya threatened to subpoena Mr. Giorgetti in connection with this lawsuit, as Cisco recognizes, such a subpoena was never issued. Without the use of the process, i.e., the subpoena, there can be no action for abuse of process. Ruberton, 280 N.J. Super at 131 ("[t]here can be no abuse of process without use. If the process is not used at all no action can lie for its abuse."). Furthermore, there are no allegations that Cisco was coerced or oppressed by Avaya sending the Giorgetti letter; instead, the allegations of intimidation and coercion only pertain to that of a former employee. See Tedards, 232 N.J. Super. at 549 (abuse of process only pertains to coercive or oppressive acts towards the defendant); SKB Catalogue P'ship v. Orion Pictures Corp., 723 F. Supp. 1053, 1067-68 (D.N.J. 1989)(same). Accordingly, the Magistrate Judge clearly erred by failing to consider whether the Giorgetti Letter constitutes a process.

---

[1] The Court notes that the type of warning letter sent to Mr. Giorgetti is normally sent to former employees as a matter of course. See James Pooley, Trade Secrets § 9.06[6] (2011)("Following termination, the employer may communicate its concerns in a variety of ways. Most typical is the 'warning letter[.]'").

As a corollary issue, Cisco's allegation that as a part of its claim for relief in the Complaint (see Complaint, Wherefore Clause, paragraph (g)), Avaya is seeking an injunction to inhibit competition is also insufficient to support a claim for abuse of process. See Am. Count., ¶ 7. As the Court indicated earlier, because an injunction has not been issued in this case, "potential harm does not support a claim of a special grievance, since the inquiry here is not what could have happened . . . but what actually happened." Component Hardware, 2007 U.S. Dist. LEXIS 54900 at *17-18 (citing Klesh v. Coddington, 295 N.J. Super. 51, 62 (Law Div. 1996)). In other words, because an injunction has not been issued, there exists no abuse. Likewise, Cisco's allegations that Avaya's post-complaint conduct was used to intimidate its own employees cannot not stand since Cisco has not identified any judicial process used in that respect. As such, without the use of process, even if Avaya's litigation has intimidated its own employees, this fact cannot form a basis for a claim of abuse of process.

Finally, Cisco alleges that Avaya has used the discovery process in this case as means to harass Cisco and raid Cisco's confidential information through broad, sweeping requests that bear no legitimate relationship to Avaya's claims. See Am. Count., ¶ 23. Specifically, Cisco complains that Avaya has "propounded discovery requests seeking access to virtually every aspect of Cisco's business - including . . . business strategies, competitive initiatives, product development plans, customers or potential customers, product pricing, and hiring practices and procedures." Id. at ¶ 30. Essentially, this aspect of Cisco's claim is based upon allegations that Avaya coerced Cisco by way of discovery to turn over sensitive business information in order to gain a competitive edge. The Court has scoured case law on this issue and has not found any authority supporting the assertion that

the propounding of seemingly broad or irrelevant discovery requests alone constitutes "further acts" in the context of an abuse of process claim. The Court turns to that discussion.

As a threshold matter, courts, in and out of New Jersey, are in agreement that discovery may constitute "process" in an abuse of process claim. See, e.g., Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297 (3d Cir. 2003) (interpreting Pennsylvanian law to include discovery in the general category of processes); Unitronics, Inc v. Robotic Parking Sys. Inc., No. 09-3493, 2010 WL 2545169 (D.N.J. Jun. 18, 2010) (recognizing discovery, pursuant to New Jersey law, as a process in the context of an abuse of process claim); Giordano v. Claudio, 714 F. Supp. 2d 508 (E.D. Pa. 2010) (indicating that discrete portions of a lawsuit, such as discovery requests, can serve as the underlying process); Nienstedt v. Wetzel, 651 P.2d 876, 880 (Ariz. Ct. App. 1982) (defining process as a compulsory act proceeding under court authority and that process includes the "entire range of procedures incident to the litigation process"); Vallance v. Brewbaker, 411 N.W.2d 808, 810 (Mich. Ct. App. 1987) (performing discovery "for the improper purpose of imposing an added burden and expense on the opposing party" may form the basis of an abuse of process claim); Givens v. Mullikin ex rel. Estate of McElwaney, 75 S.W.3d 383 (Tenn. 2002) (recognizing that discovery is a process which can be abused when attempting to impose substantial costs on the opposing party).

However, to satisfy the second prong of an abuse of process claim - i.e., "further acts" - there must be allegations of coercive or oppressive acts taken in addition to utilizing legitimate process or procedures. See Simone, 844 F.2d at 1036. For example, in Unitronics, Inc v. Robotic Parking Sys. Inc., No. 09-3493, 2010 WL 2545169 (D.N.J. Jun. 18, 2010), the court found that the plaintiffs failed "to allege a further act representing the perversion of the legitimate use of" discovery because they did not allege "any acts subsequent to Defendant's use of the discovery process." Id. at *6. On

the other hand, in Owens v. Chasko, No.11-0335, 2011 U.S. Dist LEXIS 81470 (E.D. Cal. Jul. 25, 2011), a case upon which Cisco relies, the defendant in that case, under the guise of discovery, served a request via facsimile at the plaintiff's place of employment to embarrass him. The court there found that the method in which the defendant served discovery satisfied the "further act" element. See, e.g., Tedards, 232 N.J. Super. at 551 (court found that an abuse of process claim lies when an attorney obtained a writ of ne exeat to extort his client's husband and then lied to the trial judge to set a bail amount equivalent to the owed amount to his client); Wozniak, 373 N.J. Super. at 462 (addressing claim that a landlord filed a criminal complaint against a tenant, and then attempted to use the criminal complaint as leverage to induce the tenant to withdraw his pending civil action against the landlord). Thus, in this case, in order to successfully plead an abuse of process claim, Cisco must allege a "further act" in addition to allegations that Avaya used discovery for an improper purpose.

While Cisco alleges that Avaya improperly utilizes discovery procedures as a means to gain a competitive advantage, Cisco falls short of pleading an abuse of process claim because it fails to allege a "further act." Rather, Cisco simply alleges that Avaya's act of propounding inappropriate discovery requests serves to oppress and coerce Cisco to turn over confidential and irrelevant business information.[2] See Penwag Prop., 148 N.J. Super. at 498 (noting that regular and legitimate use of the litigation process is not abuse of process). This is insufficient; in order to pass Rule 12(b)(6) muster, there must be allegations of an oppressive act performed to pervert the actual process itself. See Unitronics, supra. Absent those allegations, Cisco's mere assertion that, Avaya's

---

[2] Indeed, the mechanism to remedy Cisco's complaints of overreaching discovery requests by Avaya is through motion practice before the Magistrate Judge.

ulterior motive was propounding discovery requests in order to gain confidential information, lacks the additional "further act" element to properly plead an abuse of process claim. Furthermore, to the extent Cisco contends that Avaya's act of using discovery information to unfairly compete with Cisco to further its "Attack Cisco" campaign qualifies as a "further act", those conclusory allegations are purely speculative and do not conform to the Towmbly standard. Indeed, Cisco does not allege how Avaya is improperly using this information and, worse, it fails to allege how Avaya obtained any discovery information – either through its counsel or otherwise – protected by an order issued by the Magistrate Judge.[3]

Accordingly, the Magistrate Judge clearly erred in finding that Cisco's allegations pertaining to its abuse of process claim are not futile.

**III.    Unfair Competition**

In New Jersey, the doctrine of unfair competition traditionally has been interpreted by courts in accordance with common law principles. See Columbia Broadcast Sys. v. Melody Recordings, 134 N.J. Super. 368, 375 (App. Div.1975). Understandably, because New Jersey's common law on this subject continues to evolve, it "does not have clear boundaries but is instead flexible and elastic as evolving standards of morality demand and the essence of an unfair competition claim is the enforcement of fair play." Lexington Nat'l Ins. Corp. v. Ranger Ins. Co., 326 F.3d 416, 419 (3d Cir. 2003); Duffy v. Charles Schwab & Co., 123 F. Supp. 2d 802, 815 (D.N.J. 2000); Ryan v. Carmona Bolen Home for Funerals, 341 N.J. Super. 87, 92 (App. Div. 2001); Columbia Broadcast Sys., 134 N.J. Super. at 376. Thus, the purpose of the law is to promote higher ethical standards in the

---

[3] There is a protective order in place in this litigation. As such, Cisco must also allege that Avaya's counsel violated the protective order by turning over sensitive business information to Avaya for improper use.

business world. N.J. Optometric Ass'n v. Hillman-Kohan Eyeglasses, Inc., 144 N.J. Super. 411, 427 (Ch. Div.1976) (internal citation omitted). In that connection, a court's goal in assessing the sufficiency of an unfair competition claim is to identify any use of misleading, deceptive, injurious or otherwise improper and wrongful practices which would render competition unfair.  See Ryan, 341 N.J. Super at 92; Biovail Corp. Int'l v. Hoechst Aktiengesellschaft, 49 F. Supp. 2d. 750, 777 (D.N.J. 1999); Warner Lambert Co. v. Purepac Pharmaceutical Co., No. 98-02749, 2000 WL 34213890, at *10 (D.N.J. Dec. 22, 2000).  The law must be sufficiently flexible to accommodate that goal. Id.

As guidance, the Restatement (Third) of Unfair Competition sets forth the principle of unfair competition:

> It is impossible to state a definitive test for determining which methods of competition will be deemed unfair in addition to those included in the categories of conduct described in the preceding Comments. Courts continue to evaluate competitive practices against generalized standards of fairness and social utility. Judicial formulations have broadly appealed to principles of honesty and fair dealing, rules of fair play and good conscience, and the morality of the marketplace. The case law, however, is far more circumscribed than such rhetoric might indicate, and courts have generally been reluctant to interfere in the competitive process. An act or practice is likely to be judged unfair only if it substantially interferes with the ability of others to compete on the merits of their products or otherwise conflicts with accepted principles of public policy recognized by statute or common law.

Restatement (Third) of Unfair Competition § 1 cmt. g (1995).[4]

---

[4] It has been noted that unfair competition "has been used in cases where there was defamation of a competitor, disparagement of goods and business methods, intimidation, annoyance or harassment of customers, obstruction of access to the place of business, threats of groundless suits, inducing breaches of employee confidence, as well as false marketing (trademark infringement, and the Like)." Business Torts Between Competitors, 139-APR N.J. Law. 36 (1991).

Here, the Magistrate Judge found that Cisco had sufficiently alleged an unfair competition claim. The Magistrate Judge reasoned that: (1) because Cisco had sufficiently based its unfair competition claim upon the allegations of abuse of process; and (2) because Avaya asserted an identical unfair competition claim, to disallow Cisco to do so would be "unjust." As a preliminary matter, since I have found that Cisco's abuse of process claim is insufficiently pled, necessarily, I must focus on the specific allegations pertaining to Cisco's unfair competition claim, rather than bootstrapping on the abuse of process claim. As a result, the Court notes that it is difficult to review the Magistrate Judge's determination on this count because there are no explicit findings of how Cisco's allegations support a claim for unfair competition because the Magistrate Judge relied on the abuse of process claim for her holding.

Cisco alleges a hodgepodge of conduct by Avaya which it claims amount to unfair competition. It is difficult to parse out the complaints underlying Cisco's unfair competition claim from Cisco's abuse of process claim. It appears that the same averments pertain to both counts; that is, Avaya is using this litigation to stifle competition and slow or prevent the departure of Avaya employees who seek job opportunities with Cisco as well as to gain access to Cisco's confidential and proprietary information. Having reviewed those factual allegations, the Court finds that they do not sufficiently support the claim.

To begin, in its opening allegations, Cisco pronounces that Avaya "is using this litigation in bad faith as an anti-competitive tool to further its well-publicized 'Attack Cisco' strategy. By filing this baseless litigation, Plaintiff is attempting to . . . stifle competition . . . ." Am. Count., ¶ 1. Looking to Cisco's factual allegations, it appears Cisco attempts to support such assertions in two ways: First, Cisco devotes a substantial portion of its Counterclaim detailing how Avaya had been,

-15-

and continues to, hire Cisco's high-level employees. In that regard, Cisco accuses of Avaya of hiring these employees to stifle competition. As an example, Cisco points to Avaya's hiring of Phil Graham. Cisco concludes that because Mr. Graham is "unquestionably a 'subject matter expert' in Cisco's TelePresence offering and knows much of Cisco's confidential and proprietary information," "[h]e has been hired to lead Avaya's research and development efforts . . . . Avaya has hired to Mr. Graham to create and develop its telepresence capability to compete with Cisco." Id. at ¶ 18.

However, none of these allegations can support Cisco's unfair competition claim. As to the hiring of Cisco's employees, this Court has advised the parties in this case that hiring employees from competitors does not in of itself constitute unfair competition. See Tran. at 35:13-18. Rather, the parties are in agreement that the hiring must be for some illegal or improper purpose. Id. On that issue, Cisco argues in its opposition brief that it sufficiently alleges that Avaya has hired former Cisco employees for the purpose of obtaining access to Cisco's confidential information and trade secrets. See Opp. Brief at p. 6. Paragraphs 15-18 of the Amended Counterclaims detail Avaya's conduct of habitually hiring Cisco's high-level employees, including Mr. Graham. However, none of those paragraphs actually alleges that Avaya hired those employees for some illegal or improper purposes, e.g., obtaining Cisco's trade secrets. Only one sentence in the entire Counterclaim hints at some illegal conduct: "The bad faith nature of Avaya's claims is boldly underscored by the fact that it is undertaking the very same conduct that it claims, when undertaken by Cisco, is illegal."[5] Am. Count., ¶ 18. This is speculative and conclusory – Cisco has not alleged an improper purpose,

---

[5] The parties invite the Court to compare Avaya's unfair competition claim with Cisco's claim. However, the allegations at issue here are Avaya's unfair competitive conduct, not that of Cisco. Thus, the Court declines to review the merits of Avaya's claim on this appeal. Indeed, Avaya's claims have not yet been tested and reviewed.

or any facts that would give rise to an inference of an illegal motive on the part of Avaya when it hired Cisco's former employees.[6] Left only with allegations of hiring, Cisco cannot attribute those complaints to its unfair competition claim because as they stand now, without any facts indicating an improper purpose or conduct, there is nothing unfair about Avaya hiring Cisco's employees, no matter how many high-level employees were hired, or how much knowledge each of those employees has regarding Cisco.

Next, Cisco generally alleges that "Avaya uses litigation or the threat of litigation as an anti-competitive tool for the purpose of harassing competitors and coercing them to agree not to solicit Avaya employees." Am. Count., ¶ 12. In that connection, Cisco describes a pattern of harassment by Avaya in order to hinder competition. Specifically, Cisco refers to Avaya's application for an injunction in this case; Cisco asserts that such application is sought to prohibit Cisco from hiring any Avaya employees. Id. at ¶ 7. In addition, Cisco refers to a 2009 incident, unrelated to this litigation, wherein Avaya threatened to sue Cisco for engaging in unfair competition by hiring eight of its employees. Id. at ¶ 11. And, in conclusory terms, Cisco refers to Avaya's conduct as bad faith and,

---

[6] Apparently, Cisco argued to the Magistrate Judge, in a letter subsequent to the filing of its motion to amend, that it learned that Avaya hired John Orton, a former Cisco employee, for an improper purpose. Cisco contended that "upon information and belief, Mr. Orton used or disclosed the confidential information gained at Cisco to aid Avaya in preparation of its response to the RFP, and more importantly, Avaya hired Mr. Orton precisely for this purpose." Opp. Brief, p. 8. Moreover, to further demonstrate Avaya's unfair competition, Cisco described to the Magistrate Judge that Avaya deceptively sent its employees to "snoop" at a Cisco-hosted industry conference for customers and partners. Id. at p. 11. Cisco devotes much of its Opposition Brief on this appeal describing those allegations. As Avaya correctly points out, however, those aforementioned allegations were not included in Cisco's Amended Counterclaim, and more importantly, it does not appear that those allegations were considered by the Magistrate Judge. As such, this Court cannot, on this appeal, consider those allegations that were both not included in the pleadings and thus, appropriately, not considered by the Magistrate Judge.

in particular, Cisco alleges, without any support, that Avaya's initiation of this litigation is baseless. See Id. at ¶¶ 1, 15.  Simply put, based on the initiation of this lawsuit, Cisco complains that Avaya has in the past, and continues to, unfairly compete with Cisco by attempting to intimidate and prevent Cisco from hiring Avaya's staff, and by so doing, Avaya is attempting to inhibit competition in bad faith by restricting the flow of labor in the market place.

Crucially, however, missing from Cisco's allegations in this context is any support for its assertion of Avaya's bad faith.  With respect to this litigation, Avaya initially brought claims against Cisco for misappropriation of trade secrets and unfair competition and against Avaya's former employee, Mr. Canha.  The parties settled the claims against Mr. Canha, and Avaya continues to litigate its claims against Cisco.  As a part of the relief sought against Cisco, Avaya seeks to enjoin Cisco from "raiding" Avaya's employees.  While Cisco accuses Avaya of brining this litigation and seeking an injunction without any legal or factual basis, there are no allegations setting forth any factual support for that assertion.[7]  Indeed, the allegations cannot be in mere speculative terms; rather, there must be some factual allegations to support the conclusion that this litigation is unfounded.  See Reckitt Benckiser Inc. v. Tris Pharma, Inc., No. 09-135 (FLW), 2011 U.S. Dist. LEXIS 19713, at *26 (D.N.J. Feb. 28, 2011) ( "[a] prima facie case of unfair competition, like tortious interference and employee piracy, requires evidence of bad faith or malicious conduct.")(citing Samsung America Inc. v. Park, 2006 WL 3627072, at * 17 (N.J. Super. App. Div. Dec.11, 2006).  Such allegations are important because Avaya has a legal right to pursue Cisco for

---

[7] There appears to be at least one authority from this district that has rejected allegations of baseless litigation as a basis for an unfair competition claim.  See Hoffman La Roche Inc. v. Genpharm Inc., 50 F. Supp. 2d 367, 380 (D.N.J. 1999).  The Court need not resolve that question since Cisco has failed to sufficiently plead its unfair competition counterclaim.

allegedly improper hiring. Simply inserting words such as "bad faith" or "baseless" is insufficient. See Twombly, 550 U.S. at 555 (a complaint must not contain conclusory labels without setting forth a plausible factual basis). Likewise, although Cisco insists that Avaya is pursing this litigation in "bad faith," Cisco does not allege any facts for support. Rather, claiming that this litigation is baseless, Cisco concludes that Avaya is bringing this litigation in bad faith. These mere conclusions are not sufficient to pass Rule 12(b)(6) muster.

Finally, Cisco maintains that Avaya is using discovery in this case to gain valuable business information regarding Cisco to unfairly compete. See Am. Count., ¶ 23. Any argument in that respect has already been rejected by the Court, supra. To reiterate, while Cisco alleges that Avaya has been requesting overly broad and irrelevant discovery from Cisco, it has failed to allege any facts to support its claim that Avaya has been using this information for illegal or improper purposes. See supra, Section II, pp. 10-11.

Accordingly, none of Cisco's allegations meet the applicable standards for an unfair competition claim, and thus, it was clear error to permit the claim to be filed. Nonetheless, the Court will provide Cisco an opportunity to re-plead only its unfair competition claim in light of additional allegations of improper conduct on the party of Avaya – allegations that Cisco has made since the filing of its motion to amend before the Magistrate Judge. Cisco shall file its Amended Counterclaims within thirty days from the date of the Order accompanying this Opinion.

## CONCLUSION

Based on the foregoing, the Magistrate Judge's Order dated November 14, 2011 is hereby **VACATED**. Cisco's motion to amend its Counterclaims is **DENIED**; however, Cisco shall be given thirty days from the date of the Order accompany this Opinion to re-plead its counterclaim for unfair competition consistent with this Opinion.


Dated: June 6, 2012                                                                                  /s/ Freda L. Wolfson
                                                                                                              Freda L. Wolfson, U.S.D.J.